IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs May 21, 2008

STATE OF TENNESSEE v.
KENNETH RAY KILPATRICK and CARRIE FAY KILPATRICK

Direct Appeal from the Circuit Court for Lewis County
Nos. 6670, 6689        Jeffrey S. Bivins, Judge

No. M2007-02082-CCA-R3-CD - Filed June 29, 2009

Defendant, Kenneth Ray Kilpatrick, entered a plea of guilty in case no. 6670 to one count of manufacturing marijuana in an amount not less than twenty plants nor more than ninety-nine plants, a Class C felony; one count of facilitation of possession with intent to manufacture marijuana, a Class D felony; and one count of possession of unlawful drug paraphernalia, a Class A misdemeanor. Following a sentencing hearing, the trial court sentenced Defendant Kenneth Kilpatrick as a Range II, multiple offender, to concurrent sentences of six years for his Class C felony conviction, four years for his Class D felony conviction, and eleven months, twenty nine days for his misdemeanor conviction, for an effective sentence of six years. Defendant, Carrie Fay Kilpatrick, entered a plea of guilty in case no. 6670 to one count of facilitation of possession with intent to manufacture marijuana, a Class D felony, and possession of unlawful drug paraphernalia, a Class A misdemeanor. In case no. 6689, Defendant Carrie Kilpatrick entered a plea of guilty to one count of simple possession of marijuana, a Class A misdemeanor, and one count of possession of unlawful drug paraphernalia, a Class A misdemeanor. The trial court sentenced Defendant Carrie Kilpatrick as a Range I, standard offender, to three years for her Class D felony conviction, and eleven months, twenty-nine days for each misdemeanor conviction. The trial court ordered Defendant Carrie Kilpatrick to serve her sentences in case nos. 6670 and 6689 concurrently for an effective sentence of three years. On appeal, both Defendants argue that the trial court erred in denying their respective requests for alternative sentencing and ordering each Defendant to serve his or her sentence in confinement. Defendant Kenneth Kilpatrick also contends that the trial court erred in its application of enhancement factors in determining the length of his sentence. After a thorough review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

JOHN EVERETT WILLIAMS, J, delivered the opinion of the court, in which JERRY L. SMITH, J., joined. THOMAS T. WOODALL, J., not participating.

Larry Joe Hinson, Jr., Hohenwald, Tennessee, for Appellant, Kenneth Ray Kilpatrick; and John P. Cauley, Franklin, Tennessee, for Appellant, Carrie Fay Kilpatrick.

Robert E. Cooper, Jr., Attorney General and Reporter; Lacy Wilber, Assistant Attorney General; Kim Helper, District Attorney General; and Stacey Edmonson, Assistant District Attorney General, for the appellee, the State of Tennessee.

**OPINION**

## I. Background

At the commencement of the sentencing hearing, both Defendants agreed to stipulate that they would not be able to pass a drug screen test that day if one was administered. Presentence reports for both Defendants were entered as exhibits without objection at the sentencing hearing. Although the transcript of the guilty plea submission hearing is not included in the record, the "official version" in case no. 6670 contained in the presentence report states that:

> On January 7, 2006, Deputy Richie Weatherly of the Lewis County Sheriff's Department went to Kenneth and Carrie Kilpatrick's residence to issue a search warrant to locate Stoney [sic] Kilpatrick, Kenneth and Carrie's son. While at the residence, the officer noticed a small amount of marijuana in plain view. He obtained another search warrant to search the house for drugs. Officers located numerous marijuana plants, seeds, and growing equipment.

A narrative report prepared by Deputy Weatherly further stated that:

> [U]pon executing the second search warrant, marijuana was found throughout the house in several different types of containers. Two grow rooms were located upstairs containing 47 marijuana plants. Grow lamps, fans, heating, watering supplies, fert[i]lizer and potting soil and timers were all found upstairs. Also confiscated was a Marlin .17 rifle, serial #96605623, with a 3x9 scope attached.

According to Defendant Carrie Kilpatrick's presentence report, Officer Kevin Carroll's narrative regarding case no. 6689 stated:

> On [December 31, 2005], I was patrolling on 412 East when I noticed a vehicle behind me going slow. I slowed down to about 20 m.p.h. and the vehicle finally caught up to me. I followed the vehicle out 412 East and the vehicle then made a quick left hand turn. When the vehicle made this turn it ran completely over the curb on the right side of the roadway. I gave dispatch the tag [number] and stopped the vehicle on Gray Road. The driver was then found to be Carrie Kilpatrick. I asked [Ms.] Kilpatrick for her [driver's license], insurance and registration and told her why I stopped her. She then told me the reason she ran over the curb was because Janice was telling her where to turn and she did not know where they were going. [Ms.] Kilpatrick then told me that she did not have her [driver's license] on her. As I was talking to [Ms.] Kilpatrick, Officer Randal Hankins asked for consent to search and

she refused. As I was filling out her citations for no [driver's license] in her possession, and financial responsibility[,] Officer Hankins ran his K9 dog and it alerted on the vehicle. She was then advised that the dog had alerted on the vehicle[,] and Officer Hankins and Sergeant Hinson searched the vehicle. Inside the vehicle, inside a purse[,] a glass pipe was found that had some white residue in it and it was burnt on the end. [Ms.] Kilpatrick claimed the purse was hers. Also there [were three] roaches found in the ashtray that field tested positive for marijuana. Officer Hankins went through Janice Sharp's purse and found [two] straws with white residue in them[,] and a small bag with white residue in it. Both of them admitted to using Meth in the past and Janice admitted to smoking it the night before. Both were cited and released for drug paraphernalia[,] and Carrie Kilpatrick was also cited for simple possession of marijuana.

According to the presentence report, Defendant Carrie Kilpatrick was forty-five years old at the time of the sentencing hearing. She left high school after completing the ninth grade and reported a sporadic employment history. Ms. Kilpatrick stated in the report that she and her husband, Defendant Kenneth Kilpatrick, were self-employed, but she acknowledged that they had not worked for approximately three months.

Ms. Kilpatrick described her physical health as poor stating that she had a "bulging disc" with eighty-five percent nerve damage on her left side. Ms. Kilpatrick stated that she had been prescribed various medications for her back pain including loratab, phenergan, and morphine, but "they strung her out," and she stopped taking her medication. Ms. Kilpatrick stated in the report that she first started using marijuana "two or three times a day" when she was eighteen years old. Ms. Kilpatrick said, "It helps the pain in my back. It makes me eat and at night, if I have a joint, I can sleep." During her interview, Ms. Kilpatrick told the probation officer that "drug testing [would] be an issue" as a condition of probation. Ms. Kilpatrick, however, expressed her willingness to try other options for the management of her back pain.

According to the presentence report, Ms. Kilpatrick has three prior felony convictions for possession of marijuana, one prior misdemeanor marijuana possession conviction, and one conviction for unlawful possession of drug paraphernalia. Renee Gamber, an employee with PSI Probation, testified at the sentencing hearing that she served as Ms. Kilpatrick's probation officer after Ms. Kilpatrick was sentenced for unlawful possession of drug paraphernalia. Ms. Gamber said that Ms. Kilpatrick violated her probation on two separate occasions for receiving new charges, testing positive on drug screens, not reporting, and not paying her fines and court costs. Ms. Kilpatrick's probation was revoked, and the trial court ordered her confined in the county jail until her fines and court costs were paid in full. Ms. Gamber said that Ms. Kilpatrick complied with the trial court's order and was released from jail.

According to his presentence report, Defendant Kenneth Kilpatrick was forty-six years old at the time of the sentencing hearing and had completed the ninth grade in high school. Mr.

Kilpatrick reported that he had worked for Ivie's Auto Repair in Columbia from 1996 to 2005 when he resigned. Mr. Kilpatrick stated that he is currently self-employed.

The presentence report reflects that Mr. Kilpatrick has two misdemeanor convictions for simple possession of marijuana, five felony convictions for possession of marijuana, and one conviction for driving under the influence. Mr. Kilpatrick stated that he has smoked marijuana since he was sixteen years old "whenever he could get it." Mr. Kilpatrick told his probation officer, "I don't see how [marijuana] harms me in any way and it may help in many ways as for pain."

Mary Lou Jordan, Defendant Kenneth Kilpatrick's mother, testified that she depended on Mr. Kilpatrick to take his father to doctor appointments and to drive her when she needed to do errands. Ms. Jordan stated that she was willing to support Mr. Kilpatrick in any way she could if he were placed on probation. Ms. Jordan said that Mr. Kilpatrick had not been in "trouble" for the past thirteen or fourteen years.

Ms. Jordan stated that she had known Defendant Carrie Kilpatrick for thirty years. Ms. Jordan said that Ms. Kilpatrick suffered from back pain. Ms. Jordan stated that Ms. Kilpatrick stopped going to the pain clinic after she became addicted to her prescribed medication. Ms. Jordan testified that Ms. Kilpatrick now used marijuana to control her back pain. Ms. Jordan described Ms. Kilpatrick as "peaceful," and "a good person."

On cross-examination, Ms. Jordan acknowledged that Mr. Kilpatrick's father had other children who could drive him to the doctor's office. Ms. Jordan said that she was aware that Mr. Kilpatrick had been convicted of driving under the influence in 2002, and simple possession of marijuana in 2000. Ms. Jordan explained that she meant on direct examination that Mr. Kilpatrick had not been incarcerated during the past thirteen or fourteen years as a result of his convictions.

Defendant Kenneth Kilpatrick testified on his own behalf at the sentencing hearing. He acknowledged that he had violated the law and took responsibility for the offenses. Mr. Kilpatrick said that he had held several long-term jobs since leaving high school. Mr. Kilpatrick stated that he resigned from his last job at Ivie's Auto Repair because the chemicals from the paint and paint thinner gave him "massive headaches." Mr. Kilpatrick said that he was currently assisting his father-in-law in the opening of a new flea market.

Mr. Kilpatrick acknowledged that he had been incarcerated in the Lewis County Workhouse in 1994 or 1995. He was released on parole after serving ten months, but he violated the terms of his parole when he failed to pass a drug screen test. Mr. Kilpatrick said that he was paroled again after serving an additional four months in confinement, and he was able to successfully complete his parole. Mr. Kilpatrick said that after he served this sentence, he was subsequently placed on probation on four separate occasions and was never found in violation of any of his probated sentences.

Mr. Kilpatrick explained that he read about the medicinal value of marijuana in a magazine. At that time, Mr. Kilpatrick said that his wife was suffering from back pain and had become "strung out" on pain medication. Mr. Kilpatrick asked Ms. Kilpatrick if he grew marijuana for her, and if the marijuana controlled her pain, would she stop taking her prescription pain medicine. Mr. Kilpatrick stated, "and it worked."

When asked why he would smoke marijuana prior to the sentencing hearing, Mr. Kilpatrick replied, "I guess I'm stupid, I don't know, I – its hard to break old habits." Mr. Kilpatrick, however, said that he was willing to attend a drug rehabilitation program as a condition of probation, and he believed that he could successfully complete the program.

On cross-examination, Mr. Kilpatrick acknowledged that his was a close family. Mr. Kilpatrick confirmed that he spoke to Barry Carroll in the District Attorney's Office prior to the guilty plea submission hearing. Mr. Kilpatrick said that he told Mr. Carroll that:

> [M]y wife and my son did not know nothing [sic] about the grow room, and that sounds farfetched, but I have a big house. My wife has a bad back, we have an upstairs, and it's an attic-type stairs. She didn't go upstairs and she didn't know what was going on up there. I told her I had a little workshop up there. . . . You know, I did it, it's my responsibility.

Mr. Kilpatrick acknowledged that he told his wife that he was going to grow marijuana, but he said that he never told her where he was going to do so. Mr. Kilpatrick explained his concern with random drug screens as a condition of probation as follows:

> Because everybody has a different outlook in life; my outlook is that pot's good for you. It should be legal. It's the key to saving the world.

Mr. Kilpatrick said that he understood that possession of marijuana was currently illegal. Mr. Kilpatrick stated that he had forty-seven marijuana plants in his house when he was arrested, and he smoked marijuana every day if the drug was available. Mr. Kilpatrick acknowledged that he smoked three joints on the night before the sentencing hearing. Mr. Kilpatrick agreed that other family members could assist his parents if he were incarcerated, but it was more convenient for him to do so.

At the conclusion of the sentencing hearing, the trial court initially observed:

> [T]hat this case presents a difficult case for this Court. We seem to have a family here that – well, no assuming about the fact that they clearly care and love each other, and they appear to have a good family relationship. But we have a situation where all three members of the family continue to, in essence, thumb their nose at the justice system time and time again.

The trial court also found that Mr. Kilpatrick's testimony that Ms. Kilpatrick and Stony Kilpatrick did not know that Mr. Kilpatrick was growing marijuana in their home was not credible.

With respect to Defendant Kenneth Kilpatrick, the trial court placed substantial weight on the fact that he had prior criminal convictions in addition to those necessary to qualify him as a Range II offender for sentencing purposes. See T.C.A. § 40-35-114(1). The trial court also found that Mr. Kilpatrick was a leader in the commission of the offenses because he essentially testified that he was the primary actor in deciding to grow marijuana. See id. § 40-35-114(2). The trial court, however, did not assign this enhancement factor much weight.

In mitigation, the trial court found that Mr. Kilpatrick's conduct did not cause or threaten serious bodily injury but assigned relatively little weight to this consideration. See id. § 40-35-113(1). The trial court acknowledged that Mr. Kilpatrick accepted responsibility for his conduct and noted that the record established that Mr. Kilpatrick took good care of his parents. See id. § 40-35-13(13).

After considering the applicable enhancement and mitigating factors, the trial court sentenced Mr. Kilpatrick to six years for his Class C felony conviction, four years for his Class D felony conviction, and eleven months, twenty-nine days for his misdemeanor conviction.

In determining the manner of service of the sentences, the trial court noted those factors favoring some form of alternative sentencing. The trial court did not find that it was necessary to protect society against Mr. Kilpatrick's conduct despite his prior criminal history, and that there was no evidence that Mr. Kilpatrick's confinement would be a deterrence to others. The trial court also observed that although Mr. Kilpatrick had violated parole once, this violation was not a recent event.

Nonetheless, the trial court found that there was "really [no] chance of rehabilitation," and that "the likelihood of another crime happening during the probationary period [was] quite high." The trial court also found that in light of Mr. Kilpatrick's prior conduct, "a sentence of full probation would unduly depreciate the seriousness of [the] offenses." Based on the foregoing, the trial court denied Defendant Kenneth Kilpatrick's request for alternative sentencing and ordered him to serve his sentences in confinement.

With respect to Defendant Carrie Kilpatrick, the trial court placed substantial weight on Ms. Kilpatrick's prior criminal history. See T.C.A. § 40-35-114(1). The trial court also found that Ms. Kilpatrick had failed to comply with the conditions of a sentence involving release into the community for prior offenses, and that she was on probation when the offenses in case no. 6670 were committed. See id. §§ 40-35-114(8), (13).

In mitigation, the trial court found that Ms. Kilpatrick's conduct did cause or threaten serious bodily injury, and that, with respect to the facilitation conviction, Ms. Kilpatrick played a minor role in the commission of the offenses. See id. §§ 40-35-113(1), (4).

After weighing the applicable enhancement and mitigation factors, the trial court sentenced Ms. Kilpatrick as a Range I, standard offender, to concurrent sentences of three years for her Class D felony conviction, and eleven months, twenty nine days for each misdemeanor conviction.

In determining the manner of service of Ms. Kilpatrick's sentences, the trial court found that Ms. Kilpatrick's criminal history was not sufficient, by itself, to eliminate its consideration of her request for alternative sentencing. The trial court found, however, that there was concern that an alternative sentence would depreciate the seriousness of the facilitation offense. The trial court also found that the record, including Ms. Kilpatrick's statements in her presentence report, showed there did not appear to be "much, if any, chance of rehabilitation," and that the risk of Ms. Kilpatrick committing another offense was "extremely high." The trial court thus denied Ms. Kilpatrick's request for alternative sentencing, and ordered Ms. Kilpatrick to serve her sentences in confinement.

## II. Standard of Review

On appeal, the party challenging the sentence imposed by the trial court has the burden of establishing that the sentence is improper. See T.C.A. § 40-35-401, Sentencing Comm'n Comments; see also State v. Arnett, 49 S.W.3d 250, 257 (Tenn. 2001). When a defendant challenges the length, range, or manner of service of a sentence, it is the duty of this Court to conduct a de novo review on the record with a presumption that the determinations made by the court form which the appeal is taken are correct. T.C.A. § 40-35-401(d). This presumption of correction, however, "'is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances.'" State v. Carter, 254 S.W.3d 335, 344-45 (Tenn. 2008) (quoting State v. Ashby, 823 S.W.2d 166, 169 Tenn. 1991)). "If, however, the trial court applies inappropriate mitigating and/or enhancement factors or otherwise fails to follow the Sentencing Act, the presumption of correctness fails," and our review is de novo. Carter, 254 S.W.3d at 345 (quoting State v. Shelton, 854 S.W.2d 116, 123 (Tenn. Crim. App. 1992); State v. Pierce, 138 S.W.3d 820, 827 (Tenn. 2004)).

A trial court is mandated by the Sentencing Act to "impose a sentence within the range of punishment." T.C.A. § 40-35-210(c). A trial court, however, "is no longer required to begin with a presumptive sentence subject to increase and decrease on the basis of enhancement and mitigating factors." Carter, 254 S.W.3d at 346. Therefore, an appellate court is "bound by a trial court's decision as to the length of the sentence imposed so long as it is imposed in a manner consistent with the purposes and principles set out in sections -102 and -103 of the Sentencing Act." Id.

In conducting a de novo review of a sentence, this Court must consider (a) the evidence adduced at the trial and the sentencing hearing; (b) the presentence report; (c) the principles of sentencing and arguments as to sentencing alternatives; (d) the nature and characteristics of the criminal conduct involved; (e) evidence and information offered by the parties on the enhancement and mitigating factors set forth in Tennessee Code Annotated sections 40-35-113 and 40-35-114; (f) any statistical information provided by the Administrative Office of the Courts as to Tennessee sentencing practices for similar offenses; and (g) any statement the defendant wishes to make in the

defendant's own behalf about sentencing. T.C.A. § 40-35-210(b); see also Carter, 254 S.W.3d at 343; State v. Imfeld, 70 S.W.3d 698, 704 (Tenn. 2002).

In the case *sub judice*, we note that although the trial court and the parties on appeal spoke in terms of a presumption of eligibility for alternative sentencing, effective June 7, 2005, our legislature amended Tennessee Code Annotated section 40-35-102(6) by deleting the statutory presumption that a defendant who is convicted of a Class C, D, or E felony, as a mitigated or standard offender, is a favorable candidate for alternative sentencing. Our sentencing law now provides that a defendant who does not possess a criminal history showing a clear disregard for society's laws and morals, who has not failed past rehabilitation efforts, and who "is an especially mitigated or standard offender convicted of a Class C, D or E felony, should be considered as a favorable candidate for alternative sentencing options in the absence of evidence to the contrary. T.C.A. § 40-35-102(5), (6) (emphasis added). Additionally, a trial court is "not bound" by the advisory sentencing guidelines; rather it "shall consider" them. Id. § 40-35-102(6) (emphasis added).

No longer, therefore, is any defendant entitled to a presumption that he or she is a favorable candidate for probation. Carter, 254 S.W.3d at 347. Generally, defendants classified as Range II or Range III offenders are not to be considered as favorable candidates for alternative sentencing. T.C.A. § 40-35-102(6). If a defendant seeks probation, then he or she bears the burden of "establishing suitability." Id. § 40-35-303(b). As the Sentencing Commission points out, "even though probation must be automatically considered as a sentencing option for eligible defendants, the defendant is not automatically entitled to probation as a matter of law." Id. § 40-35-303, Sentencing Comm'n Cmts.

The following considerations provide guidance regarding what constitutes "evidence to the contrary:"

> (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
>
> (B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
>
> (C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant. . . .

T.C.A. § 40-35-103(1); see also Carter, 254 S.W.3d at 347. Additionally, the principles of sentencing reflect that the sentence should be no greater than that deserved for the offense committed and should be the least severe measure necessary to achieve the purposes for which the sentence is imposed. T.C.A. § 40-35-103(2), (4). The court should also consider the defendant's potential for rehabilitation or treatment in determining the appropriate sentence.

**III. Analysis**

As previously noted, a transcript of the guilty plea submission hearing was not included in the record and thus the nature and circumstances of the criminal conduct for case nos. 6670 and 6689 may be gleaned only from the brief "official versions" and narrative report contained in the presentence reports and the testimony at the sentencing hearing. Defendants' failure to include the transcript of the guilty plea hearing in the record precludes this Court from conducting a full de novo review of the sentence under Tennessee Code Annotated section 40-35-210(b). See State v. Bennett, 798 S.W.2d 783, 789 (Tenn. Crim. App. 1990); State v. Shatha Litisser Jones, No. W2002-02697-CCA-R3-CD, 2003 WL 21644345, at *3 (Tenn. Crim. App. at Jackson, July 14, 2003), no perm. to appeal filed. Nonetheless, based on our review, we find no error in the trial court's sentencing determinations.

A. Enhancement Factors

Defendant Kenneth Kilpatrick does not challenge the trial court's consideration of his prior criminal history in determining the length of his sentences for his felony convictions. See T.C.A. § 40-35-114(1). He argues, however, that the trial court erred in finding as an enhancement factor that he was a leader in the commission of the offenses. Id. § 40-35-114(2). Mr. Kilpatrick submits that there was no evidence that he directed or expected Ms. Kilpatrick to participate in the commission of the offenses. Mr. Kilpatrick contends that while knowledge of the commission of an offense in her house may have supported Ms. Kilpatrick's facilitation conviction, such knowledge is not sufficient to show that she participated in the offense.

As a Range II, multiple offender, Mr. Kilpatrick was subject to a sentence of between six and ten years for his Class C felony conviction, and a sentence of between four and eight years for his Class D felony conviction. T.C.A. § 40-35-112(b)(3), (4). At the sentencing hearing, the trial court found that:

> [T]the proof does support application of enhancement factor number two as to Mr. Kenneth Kilpatrick. This is a matter in which Mr. Kilpatrick, himself, has indicated that he was the primary actor with regard to the charges from January 7, 2006, forming the basis of the charges in [case no.] 6670, and has indicated, in fact, he's tried to indicate that neither Mrs. Kilpatrick nor Mr. Stony Kilpatrick had any knowledge of what was happening. Accordingly, the court finds factor number two to be applicable, but does not place a great deal of weight on that particular factor.

Enhancement factor (2) permits enhancement of a defendant's sentence if the defendant was a leader in the commission of an offense involving two or more criminal actors. T.C.A. § 40-35-114(2). Mr. Kilpatrick testified that he devised a plan to grow marijuana in his home after reading about the drug's possible medicinal benefits in a magazine. Mr. Kilpatrick told Ms. Kilpatrick, who suffered from back pain, that he would grow marijuana for her if Ms. Kilpatrick would quit taking her prescription medicine. Mr. Kilpatrick testified at the sentencing hearing that "it worked." Ms.

Kilpatrick acknowledged in her presentence report that she had stopped taking her medication, and that marijuana helped the pain in her back. The trial court found that Mr. Kilpatrick's testimony that Ms. Kilpatrick did not know he was growing marijuana in the house less than credible.

Based on our review, we conclude that the trial court did not err in its consideration of enhancement factor (2). Nonetheless, even if it made this determination in error, the trial court sentenced Mr. Kilpatrick to the minimum sentences in the range for both his Class C and Class D felony convictions notwithstanding Mr. Kilpatrick's lengthy prior criminal record. Defendant Kenneth Kilpatrick is not entitled to relief on this issue.

### B. Denial of Defendants' Requests for Alternative Sentencing

Mr. Kilpatrick argues that the trial court's finding that his request for alternative sentencing should be denied based on the seriousness of the offense was erroneous. Mr. Kilpatrick contends that the offenses were not sufficiently reprehensible or offensive to require incarceration. Mr. Kilpatrick also argues that the trial court erred in its finding that he was not a successful candidate for rehabilitation. Mr. Kilpatrick submits that although he had one parole violation, he was ultimately able to successfully complete his parole for that offense. Mr. Kilpatrick also testified at the sentencing hearing that he stopped drinking after he was convicted of driving under the influence. Mr. Kilpatrick argues that these factors, as well as his successful completion of probation for other offenses, indicate his suitability to rehabilitation.

As a Range II, multiple offender, Mr. Kilpatrick is not considered a favorable candidate for alternative sentencing. See T.C.A. § 40-35-102(6). Nonetheless, he remains eligible for an alternative sentence because his sentences were ten years or less and the offenses for which he was convicted are not specifically excluded by statute. T.C.A. §§ 40-35-102(6), -303(a).

The lack of an adequate record on appeal makes particularly difficult a review of the trial court's reliance on the nature and circumstances of the offenses as one of the basis for denying both Defendants' requests for alternative sentencing. As for Mr. Kilpatrick, the trial court briefly noted at the conclusion of the sentencing hearing "that a sentence of full probation would unduly depreciate the seriousness of this offense, particularly in light of the past conduct," without further explanation.

When the "seriousness of the offense" factor forms the basis for denying alternative sentencing, "'the circumstances of the offense as committed must be especially violent, horrifying, shocking, reprehensible, offensive or otherwise of an exaggerated degree,' and the nature of the offense must outweigh all factors favoring a sentence other than confinement." State v. Grissom, 956 S.W.2d 514, 520 (Tenn. Crim. App. 1997) (citations omitted).

Nonetheless, the nature and circumstances of the offenses were only one basis for denying Mr. Kilpatrick's request for an alternative sentence. Of particular significance to the trial court was Mr. Kilpatrick's lack of amenability to rehabilitation and the likelihood that he would reoffend as evidenced by Mr. Kilpatrick's testimony at the sentencing hearing and his statements in the

-10-

presentence report. The trial court acknowledged Mr. Kilpatrick's acceptance of responsibility for his offenses, his candor during the sentencing hearing, and his testimony on direct examination that he would participate in a drug rehabilitation program if it was a condition of probation. The trial court observed, however,

> [H]e then turned around on cross examination, and in very candid testimony, admitted that he would smoke pot every day if he had it available to him, and that he felt strongly that marijuana should be legalized and that marijuana was good for you.

The trial court also found that if was difficult to accept Mr. Kilpatrick's testimony "as truthful and whole, particularly with regard to whether Ms. Carrie Kilpatrick knew about the operation in the attic."

Mr. Kilpatrick stipulated at the sentencing hearing that he could not pass a drug screening test because he had smoked three joints of marijuana the night before. Mr. Kilpatrick attributed his decision to smoke marijuana, notwithstanding his sentencing hearing the next day, to the difficulty in "break[ing] old habits." Mr. Kilpatrick also told the probation officer that "drug testing [would] be an issue" if made a condition of probation because he believed that marijuana did not cause him any harm. Mr. Kilpatrick has numerous prior misdemeanor and felony convictions for possession of marijuana.

The trial judge is in the best position to assess a defendant's credibility and potential for rehabilitation. State v. Nunley, 22 S.W.3d 282, 289 (Tenn. Crim. App. 1999). Furthermore,"[a] felon'1s rehabilitation potential and the risk of repeating criminal conduct are fundamental in determining whether he or she is suited for alternative sentencing." State v. Keen, 996 S.W.2d 842, 844 (Tenn. Crim. App. 1999). Based on our review of the record, we conclude that the trial court did not err in denying Mr. Kilpatrick's request for full probation or some other form of alternative sentencing. Defendant Kenneth Kilpatrick is not entitled to relief on this issue.

Defendant Carrie Kilpatrick also appeals the trial court's denial of her request for alternative sentencing, arguing that full confinement was not the "least severe measure necessary to achieve the purposes for which the sentence is imposed." Ms. Kilpatrick, as a Range I, standard offender, convicted of a Class D felony, is considered a favorable candidate for alternative sentencing. T.C.A. § 40-35-102(6). The trial court stated that although Ms. Kilpatrick had an extensive prior criminal history, it did not find that this factor was strong enough to disqualify her as a candidate for alternative sentencing. However, the trial court found that Ms. Kilpatrick's statements in the presentence report "clearly indicated that drug testing would be a problem for her with regard to potential conditions of probation," and that she admitted that she would not be able to pass a drug screen test on the day of the sentencing hearing. The trial court found that "just based upon the offense, itself, the facilitation to manufacture the drug, that there is a concern about depreciating the seriousness of that offense." Based on a consideration of the totality of the circumstances, the trial court denied Ms. Kilpatrick's request for alternative sentencing.

In her presentence report, Ms. Kilpatrick stated:

Drug testing [as a condition of probation] will be an issue. I smoke a joint for pain and to eat and sleep. I was going to a pain clinic. They would not let me do physical therapy other than walking. The medication I was on strung me out. I took myself off of it.

Ms. Kilpatrick informed the probation officer that she has used marijuana two or three times a day since she was eighteen years old and stipulated at the sentencing hearing that she would test positive for marijuana if administered a drug screen test that day.

As noted above, the trial court is in the best position to assess a defendant's potential for rehabilitation. Nunley, 22 S.W.3d at 289. Based on our review, we conclude that the trial court did not err in denying Ms. Kilpatrick's request for alternative sentencing. Defendant Carrie Kilpatrick is not entitled to relief on this issue.

## CONCLUSION

After a thorough review, we affirm the judgments of the trial court.

_____
JOHN EVERETT WILLIAMS, JUDGE