IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs October 21, 2009

**STATE OF TENNESSEE v. THOMAS P. ISBELL**

**Direct Appeal from the Circuit Court for Lincoln County**
**No. S0800103      Robert Crigler, Judge**

———————————————————

**No. M2009-00175-CCA-R3-CD - Filed November 2, 2010**

———————————————————

Defendant, Thomas P. Isbell, was indicted for possession of oxycodone, burglary, two counts of theft over $1,000, and vandalism over $10,000. On October 21, 2008, Defendant pled guilty as charged. The sentence was left to the trial court's determination. Following a sentencing hearing, the trial court merged the two theft convictions and imposed an effective sentence of three years and six months, as a Range I standard offender, to be served by incarceration. On appeal, Defendant challenges the trial court's denial of alternative sentencing. After a thorough review of the record, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the Court, in which DAVID H. WELLES and JERRY L. SMITH, JJ., joined.

Donna Orr Hargrove, District Public Defender; and Andrew Jackson Dearing, III, Assistant Public Defender, Shelbyville, Tennessee, for the appellant, Thomas P. Isbell.

Robert E. Cooper, Jr., Attorney General and Reporter; Melissa Roberge, Assistant Attorney General; Charles Frank Crawford, Jr., District Attorney General; and Ann L. Filer, Assistant District Attorney General, for the appellee, the State of Tennessee.

**OPINION**

**I. Background**

At the guilty plea submission hearing on October 21, 2008, the State offered the following factual basis in support of Defendant's plea:

If this matter went to trial, the State's proof would be that on July 14, 2008 Sergeant Billy Brazier with the Fayetteville Police Department responded to Fred's Pharmacy located at 1202 Huntsville Highway here in Fayetteville, Lincoln County in reference to the security alarm going off at that building.

When he arrived he checked the building. He received notification from dispatch that the key holder would be in route. Soon thereafter a key holder arrived, but that person only had access to the pharmacy area of the store.

They went into the pharmacy area which apparently has its own separate outside entrance where the sergeant noticed that someone had clearly entered into the building. He then sent the civilian out to sit in her car while he checked out the rest of the building. In the meantime some backup officers arrived and joined in the search, and ultimately the officers found this defendant, Mr. Isbell, in the bathroom located in the storage area of the building.

He was found in possession of a backpack which contained tools that were appropriate for his efforts to gain entry; and also found approximately 1800 oxycodone pills which he had stolen from the pharmacy and had stashed in his backpack.

He did damage to the building as Your Honor noted, considerable damage. He came in through the duct work of the heating and air conditioning system there, so it was very expensive vandalism.

A sentencing hearing was held on December 16, 2008. The thirty-year-old Defendant testified that he was in a car accident on October 17, 1999, and fractured two of the vertebrae in the middle of his back. He was then prescribed hydrocodone and oxycodone, and he had been taking the drugs for "a year, a few months" when he became addicted to them. Defendant testified that he had been receiving the medication by a valid prescription; however, in early 2000, his doctor refused to authorize any further refills for the drugs. He then obtained the drugs through different doctors (doctor shopping), and he bought them off the street. Defendant testified that he realized his addiction to hydrocodone and oxycodone when he was arrested on July 14, 2008. He was employed by W&H Sheet Metal at the time. Defendant admitted that he had experimented with LSD from 1993 to 1996, and from 1997 to 1998 he used methamphetamine. He also testified that he used cocaine from 1995 to 1998, and marijuana from 1993 until early 2008. Although Defendant testified that he used marijuana "almost daily off and on," he denied that he was addicted to the drug. He refused to reveal the name of his marijuana supplier. Defendant said that he had been diagnosed by

Centerstone in 2003 having depression, and he sought help for his drug addiction at Centerstone in 2008.

Concerning his 2000 convictions for worthless checks, Defendant testified that he thought they were a mistake. He said:

> There was a service charge. I was thinking I could get the money in the bank before it went in and I think it went through electronically. Really, I didn't know how to balance my checkbook. It was the first checking account I ever had.

Defendant did not deny any of his other convictions, and he said that he would be willing to abide by any treatment for addiction arranged by the court. On cross-examination, Defendant testified that he has two sons, and he may be at least $1800 behind in child support.

## II. Denial of Request for Alternative Sentencing

On appeal, the party challenging the sentence imposed by the trial court has the burden of establishing that the sentence is improper. *See* T.C.A. § 40-35-401, Sentencing Comm'n Comments; *see also State v. Arnett*, 49 S.W.3d 250, 257 (Tenn. 2001). When a defendant challenges the length, range, or manner of service of a sentence, it is the duty of this Court to conduct a de novo review on the record with a presumption that the determinations made by the court from which the appeal is taken are correct. T.C.A. § 40-35-401(d). This presumption of correctness, however, "'is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances.'" *State v. Carter*, 254 S.W.3d 335, 344-45 (Tenn. 2008) (quoting *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991)). "If, however, the trial court applies inappropriate mitigating and/or enhancement factors or otherwise fails to follow the Sentencing Act, the presumption of correctness fails," and our review is de novo. *Carter*, 254 S.W.3d at 345 (quoting *State v. Shelton*, 854 S.W.2d 116, 123 (Tenn. Crim. App. 1992); *State v. Pierce*, 138 S.W.3d 820, 827 (Tenn. 2004)).

In conducting a de novo review of a sentence, this Court must consider (a) the evidence adduced at the trial and the sentencing hearing; (b) the presentence report; (c) the principles of sentencing and arguments as to sentencing alternatives; (d) the nature and characteristics of the criminal conduct involved; (e) evidence and information offered by the parties on the enhancement and mitigating factors set forth in Tennessee Code Annotated sections 40-35-113 and 40-35-114; (f) any statistical information provided by the Administrative Office of the Courts as to Tennessee sentencing practices for similar offenses; and (g) any statement the defendant wishes to make in the defendant's own behalf about

sentencing. T.C.A. § 40-35-210(b); *see also Carter*, 254 S.W.3d at 343; *State v. Imfeld*, 70 S.W.3d 698, 704 (Tenn. 2002).

A defendant is no longer entitled to a presumption that he or she is a favorable candidate for probation. *Carter*, 254 S.W.3d at 347. Our sentencing law, however, provides that a defendant who does not possess a criminal history showing a clear disregard for society's laws and morals, who has not failed past rehabilitation efforts, and who "is an especially mitigated or standard offender convicted of a Class C, D or E felony, should be considered as a favorable candidate for alternative sentencing options in the absence of evidence to the contrary. T.C.A. § 40-35-102(5), (6). Additionally, a trial court is "not bound" by the advisory sentencing guidelines; rather, it "shall consider" them. *Id*. § 40-35-102(6). Because he was convicted of two Class D felonies, a Class C felony, and a Class A misdemeanor, Defendant in this case is considered a favorable candidate for alternative sentencing. *See* T.C.A. § 40-35-102(6). Moreover, Defendant remains eligible for probation because his sentence was ten years or less, and the offenses for which he was convicted are not specifically excluded by statute. T.C.A. §§ 40-35-102(6), -303(a).

In determining whether to deny alternative sentencing and impose a sentence of total confinement, the trial court must consider if:

(A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

(B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or

(C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant....

T.C.A. § 40-35-103(1); *see also Carter*, 254 S.W.3d at 347. Additionally, the principles of sentencing reflect that the sentence should be no greater than that deserved for the offense committed and should be the least severe measure necessary to achieve the purposes for which the sentence is imposed. T.C.A. § 40-35-103(2), (4). The court should also consider the defendant's potential for rehabilitation or treatment in determining the appropriate sentence.

The determination of entitlement to full probation necessarily requires a separate inquiry from that of determining whether a defendant is entitled to a less beneficial alternative sentence. *See State v. Bingham,* 910 S.W.2d 448, 455 (Tenn. Crim. App. 1995),

*overruled on other grounds* by *State v. Hooper*, 29 S.W.3d 1, 9-10 (Tenn. 2000). A defendant is required to establish his suitability for full probation as distinguished from his favorable candidacy for alternative sentencing in general. *State v. Mounger*, 7 S.W.3d 70, 78 (Tenn. Crim. App. 1999); *see* T.C.A. 40-35-303(b) (2006); *Bingham*, 910 S.W.2d at 455-56. A defendant seeking full probation bears the burden of showing that probation will subserve the ends of justice and the best interest of both the public and the defendant. *State v. Dykes*, 803 S.W.2d 250, 259 (Tenn. Crim. App. 1990), *overruled on other grounds by Hooper*, 29 S.W.3d at 9. As the Sentencing Commission Comments point out, "even though probation must be automatically considered as a sentencing option for eligible defendants, the defendant is not automatically entitled to probation as a matter of law." *Id.* § 40-35-303, Sentencing Comm'n Cmts.

Defendant contends that the trial court erred in denying his request for alternative sentencing. He first argues that he should have been granted probation. In determining Defendant's sentence, the trial court noted that it reviewed the following:

> [T]he evidence received at this sentencing hearing, and the plea acceptance hearing, and the bond revocation hearing; the presentence report; the presentence report; the principles of sentencing and arguments as to sentencing alternatives; the nature and characteristics of the criminal conduct involved; evidence about statutory mitigating and enhancing factors; the defendant's own testimony, his potential or lack of potential for rehabilitation or treatment.

The court considered Defendant's long history of criminal conduct, the seriousness of the offenses, and that measures less restrictive than confinement were applied unsuccessfully to Defendant. The court further considered Defendant's social and work history and noted that his "chance for rehabilitation is poor." The presentence report reflects that Defendant has a prior history of criminal conduct from 1993 to the present. He has convictions for failure to appear, two convictions for criminal simulation, theft up to $500, and three worthless check convictions. He also has two probation violations. In addition to his illegal use of prescription pain medication, Defendant admitted to the use of LSD from 1993 to 1996, methamphetamine from 1997 to February 1998, cocaine from 1995 to February 1998, and "almost daily" use of marijuana from 1993 to early 1998. The record also shows that Defendant has a sporadic work history, and he was at least $1,800 behind on child support at the time of the sentencing hearing. This reflects poorly on Defendant's potential for rehabilitation, and we conclude that the trial court did not abuse its discretion in denying Defendant's request for probation.

Defendant also argues that the trial court erred in not sentencing him to community corrections, which is a form of alternative sentencing. Pursuant to statute, offenders who

satisfy the following minimum criteria are eligible for participation in a community corrections program:

> (A) Persons who, without this option, would be incarcerated in a correctional institution;
>
> (B) Persons who are convicted of property-related, or drug- or alcohol-related felony offenses or other felony offenses not involving crimes against the person as provided in title 39, chapter 13, parties 1-5;
>
> (C) Persons who are convicted of nonviolent felony offenses;
>
> (D) Persons who are convicted of felony offenses in which the use or possession of a weapon was not involved;
>
> (E) Persons who do not demonstrate a present or past pattern of behavior indicating violence;
>
> (F) Persons who do not demonstrate a pattern of committing violent offenses [.]

T.C.A. § 40-36-106(a).

However, even though an offender meets the requirements for eligibility for community corrections, he or she is not automatically entitled to such relief. *State v. Ball*, 973 S.W.2d 288, 294 (Tenn. Crim. App. 1998); *State v. Taylor*, 744 S.W.2d 919, 922 (Tenn. Crim. App. 1987). Rather, the statute provides that the criteria shall be interpreted as minimum standards to guide a trial court's determination of whether that offender is eligible for community corrections. T.C.A. § 40-36-106(d).

Defendant relies on *State v. Cummings*, 868 S.W.2d 661 (Tenn. Crim. App. 1992) to support his contention that he should have been placed on community corrections. In *Cummings*, the defendant was charged with eight counts of fraudulently obtaining a controlled substance. He was denied community corrections by the circuit court, but this Court reversed that decision on appeal. *Id*. at 669. However, *Cummings* is distinguishable from the present case. Unlike Defendant, Mr. Cummings had no criminal record, and he had never been on any type of alternative sentencing. This Court determined that Mr. Cummings was a "paradigmatic type of offender who deserved community corrections." *Id*. at 668. Defendant's reliance on *Cummings* is misplaced due to his lengthy criminal history and his past failures on alternative sentencing. *See State v. Dwight Morton Spence*, No. M2006-

00133-CCA-R3-CD, 2006 WL 3498141, at *4 (Tenn. Crim. App., at Nashville, Nov. 22, 2006) *perm. app. denied* (Tenn. Feb. 6, 2007)(Defendant's prior convictions, revocation of alternative sentences, extensive history of marijuana use, failure to seek treatment, and the facts of the case supported the denial of alternative sentencing). Accordingly, Defendant is not entitled to relief on this issue.

## CONCLUSION

For the foregoing reasons, the judgments of the trial court are affirmed.

_____
THOMAS T. WOODALL, JUDGE