# IN THE SUPREME COURT OF TENNESSEE
## AT KNOXVILLE
### May 6, 2004 Session
### Heard at Maryville[1]

## STATE OF TENNESSEE v. GREGORY PIERCE

**Appeal by permission from the Court of Criminal Appeals**
**Criminal Court for Sullivan County**
**No. S42,869     R. Jerry Beck, Judge**

---

**No. E2001-01734-SC-R11-CD - Filed July 16, 2004**

---

We granted permission to appeal in this case to determine whether the trial court erred in considering the results of the defendant sex offender's polygraph examination when denying the defendant's request for probation. The polygraph examination was administered as part of the risk assessment report that is mandated by statute for all sex offenders seeking probation. Because polygraph examinations are inherently unreliable, we hold that trial courts may not consider polygraph examination results or any portion of a risk assessment report that relies upon polygraph examination results when imposing sentences. However, even excluding the polygraph examination results, the record in this case supports the denial of probation. Accordingly, the judgment of the Court of Criminal Appeals is affirmed in part and modified in part.

**Tenn. R. App. P. 11; Judgment of the Court of Criminal Appeals**
**Affirmed in Part and Modified in Part**

FRANK F. DROWOTA, III, C. J., delivered the opinion of the court, in which E. RILEY ANDERSON, ADOLPHO A. BIRCH, JR., JANICE M. HOLDER, and WILLIAM M. BARKER, JJ., joined.

Steve McEwen, Mountain City, Tennessee, and Terry L. Jordan, Blountville, Tennessee, for the appellant, Gregory Pierce.

Paul G. Summers, Attorney General and Reporter; Michael Moore, Solicitor General; Kathy D. Aslinger, Assistant Attorney General; Al C. Schmutzer, Jr., District Attorney General, and James Goodwin, Assistant District Attorney General, for the appellee, State of Tennessee.

---

[1]This case was heard as part of the May 6, 2004, S.C.A.L.E.S. (**S**upreme **C**ourt **A**dvancing **L**egal **E**ducation for **S**tudents) project in Maryville, Blount County, Tennessee.

**OPINION**

## I. Factual and Procedural Background

Gregory Pierce was indicted for rape of a child after impregnating a twelve-year-old girl. He pleaded guilty to attempted rape of a child and received an agreed sentence of eight years, with the manner of service of the sentence to be decided by the trial court. Prior to the sentencing hearing, Counseling and Clinical Services ("CCS") conducted an assessment of Pierce, to evaluate his risk of re-offending and to recommend a course of treatment. Dr. Michael Adler, the clinical director of CCS, submitted a report of the risk assessment and testified at the sentencing hearing.

The risk assessment report stated that "[t]he willingness or ability to honestly discuss their sexual offending behavior is the single most important factor associated with sexual treatment." The report contained Pierce's self report of this offense and his history of offending, as well as other personal information:

> Gregory was able to acknowledge the probability of his sexually offensive behavior related to the instant offense. However, he reported being too intoxicated to remember anything. He denied any other sexual behavior. Since he was determined indigent by the Court, he did not complete a Polygraph Examination. So the veracity of his denial of any other victims was not determined. His level of honesty can be considered fair at best.
>
> Gregory significantly minimized his responsibility for the sexual offense. He portrayed the victim of conviction as pursuing him when he was trying to stay away from her . . . . Gregory demonstrated no understanding or insight concerning his capacity to sexualize a child . . . . Gregory demonstrated minimal empathy for the victim. He was unsure of any potential harm his sexual contact has had on her since his perception is that she was the instigator of the sexual contact.
>
> Gregory has no prior significant criminal history and denied having a substance abuse problem and does not appear to be suffering from other serious pathology. However, he has a poor work history, limited interpersonal social skills, appears socially isolated, and seems emotionally constricted.

The risk assessment report also included the results of Pierce's penile plethysmograph ("PPG"):[2]

---

[2]Penile Plethysmograph is a test designed to measure sexual responsiveness to a variety of stimuli across gender, age, and sexual activity. See In re Care and Treatment of Tucker, 578 S.E.2d 719, 721 (S.C. 2003). Pierce has not challenged the use of this particular test, and we express no opinion on the propriety of its use in this case.

Gregory exhibited significant arousal responses to all females, infant to 17 years old and male infants, males 2-5 years old and males 12-17 years old. He demonstrated no clinical significant arousal responses to his reported sexual preference of adult women. The presence of sexual arousal responses to almost all ages of children is of significant concern and increases his risk to engage in sexually offending behavior.

The report contained a determination that on the Comprehensive Risk to Re-Offend Scale, Pierce presents a moderate risk to re-offend and that without specific treatment and supervision, he will most likely continue to "sexually act out." The report opined that Pierce is a fair candidate for sex offender treatment whose "level of risk could most likely be managed by probation provided he follows the guidelines contained in the Sex Offender Special Conditions." The report concluded with a recommendation that Pierce complete a full disclosure polygraph examination to verify his claim that he had no other sexual offense history with minors. The polygraph test was recommended because "once [Pierce's] full sexual offense history is verified, his risk to the community may change."

At Pierce's February 15, 2001 sentencing hearing, Dr. Adler testified on the contents of the risk assessment report. When asked whether the results of the PPG test were consistent with Pierce's self report of no prior offenses, Dr. Adler responded, "No, Sir. Usually individuals who have significant arousal to minors and no arousal to adults would be - our history has been it's more consistent with repetitive types of offenses." Dr. Adler also testified that the Department of Correction protocol recommends the performance of a polygraph examination on sexual offenders and that his confidence as to Pierce's risk of re-offending was qualified because Pierce had not completed a polygraph examination. However, he stated that he would "stand on" the conclusion that Pierce presented a moderate risk to re-offend even without a polygraph examination. At the end of Dr. Adler's testimony, the trial judge commented that "the report does not look bad. Most of the report favors probation." He ordered Pierce to schedule and undergo a polygraph examination and continued the sentencing hearing until polygraph results were available.

When the sentencing hearing resumed on June 21, 2001, a Summary of Polygraph Examination ("Summary") was admitted into evidence. According to this Summary, Pierce demonstrated deception when he answered "no" to the following two specific questions: 1) Are you deliberately not telling me about any other minors that you have had sexual contact with since you turned nineteen? and 2) Since you turned nineteen, have you had sexual contact with a minor that you are intentionally not telling me about? The Summary further stated that:

> This would suggest that he has not fully disclosed all minors with whom he has had sexual contact. It is our recommendation, should the Court decide to let Mr. Pierce remain in the community and attend out-patient sexual offender treatment, he be required to disclose all minors with whom he has had sexual contact within six months of

-3-

entering treatment. If he has not fully disclosed within this amount of time, the Court may want to review whether he needs more intensive treatment in a secure setting.

When commenting on the Summary, the trial court noted, "I can't see that Dr. Adler's changed his opinion." However, the trial court observed, "[n]ow, he's taken the polygraph and they found out he's untruthful. So . . . the Court can only conclude I've got a . . . person that sexually is going to act out with children." The trial court wrestled with this issue of first impression – whether polygraph test results conducted as part of a sex offender risk assessment may be considered in sentencing. The trial court acknowledged that courts have generally excluded polygraph test results as unreliable but pointed out that a publication that the Department of Correction provides to each center administering risk assessments, Ethical Standards and Principles for the Management of Sexual Abusers,[3] permits the use of polygraph tests to evaluate and treat sexual offenders. The trial court ultimately decided to consider the polygraph test results in determining the service of the sentence. After denying probation, and all other forms of alternative sentencing, the trial judge stated, "if I deny the defendant's probation, it's going to be on the results of those polygraphs."

Pierce appealed the denial of probation, arguing that the trial court erred by considering the polygraph test results. The Court of Criminal Appeals concluded that Pierce had failed to object to consideration of those results at trial and therefore had waived his right to appeal that issue.[4] However, the Court of Criminal Appeals discussed the merits of Pierce's argument and concluded that the record supported the trial court's denial of probation. As did the trial court, the intermediate court observed that the publication provided to all treatment centers by the Department of Correction, Ethical Standards and Principles for the Management of Sexual Abusers, recommends and encourages the use of polygraph tests in performing risk assessments "to elicit information not available through traditional interviewing techniques." The Court of Criminal Appeals noted that the trial court had characterized this publication as a set of administrative rules adopted by the Sex Offender Treatment Board of the Department of Correction pursuant to statutory authorization.[5] The Court of Criminal Appeals concluded that it is not the role of an appellate court to second-guess the statutory authorization that represents the policy judgment of the legislature. Therefore, the Court of Criminal Appeals did not evaluate the propriety of the trial court's use of polygraph examination results in sentencing, but instead held that even without the polygraph test results, the record contained sufficient evidence to support the trial court's decision to deny probation. We granted Pierce's application for permission to appeal.

---

[3]Published by the Association for the Treatment of Sexual Abusers in Beaverton, Oregon.

[4]The Court of Criminal Appeals found and the State maintains that Pierce waived his right to appeal this issue because the transcript of the hearings contains no record of an objection on this issue. We disagree. The trial court's order denying alternative sentencing specifically states that counsel for the defendant objected to the court's consideration of the polygraph examination results. The issue is not waived.

[5]The creation of the Board is authorized in Tennessee Code Annotated section 39-13-704 (2003).

## II. Admissibility of Polygraph Examination Results

As stated above, the Court of Criminal Appeals opined that it is not the role of an appellate court to review the use of polygraph examination results in sex offender risk assessments, because it believed that the use of such results had been condoned in an administrative rule promulgated according to the policy judgment of the legislature. Relying upon prior decisions of this Court, Pierce contends polygraph exam results are inherently unreliable and that the trial court erred by considering the results of a polygraph examination in determining his sentence. The State agrees with Pierce that the polygraph examination results were inadmissible as evidence. However, the State argues that the trial court did not err by considering the initial risk assessment report because no polygraph examination had been given when the risk assessment was conducted, so the initial report was not based upon or influenced by polygraph results.

We begin our analysis with a review of the statutes that govern the pre-sentence risk assessment evaluation of sex offenders. A convicted sex offender who is seeking probation must submit to an evaluation for the purposes of identifying and assessing the offender's risk of re-offending and potential for treatment and to establish a treatment plan and procedures for monitoring behavior. Tenn. Code Ann. § 39-13-705 (2003). The evaluation report "shall be included as part of the pre-sentence report and shall be considered by the court in determining the sentencing issues stated in this section." Tenn. Code Ann. § 39-13-705(b) (2003). The evaluation must be performed according to the standardized procedures developed and prescribed by the Sex Offender Treatment Board ("Board"). See Tenn. Code Ann. § 39-13-704(d)(1) (2003).[6] While the Legislature has given the Board authority to develop and prescribe standardized procedures for conducting the evaluations, it is important to note that no statutes mandate or encourage the Board to prescribe the use of polygraph examinations as part of a standardized procedure for conducting the evaluations. Polygraph examinations are mentioned in a separate statutory subsection, Tennessee Code Annotated section 39-13-704(d)(2), but the statute relates only to the use of polygraph examinations in the treatment and monitoring of sex offenders who have been "placed on probation, incarcerated with the department of correction, placed on parole, or placed in community corrections." Tenn. Code Ann. § 39-13-704(d)(2) (2003).[7] Therefore, this statutory provision authorizes polygraph examinations for treatment and monitoring that occurs after a sentencing decision has been made. Furthermore, while the statutes mandate that the evaluation report prepared in accordance with the standardized procedures adopted by the Board be included in the pre-sentence report submitted to the trial court and considered by the trial court in determining the sentencing issues,[8] the statutes do

---

[6]The Board is part of the Department of Correction and consists of thirteen members. These members are appointed by the Chief Justice of the Supreme Court (one member), the Commissioner of the Department of Correction (nine members), the Tennessee Bureau of Investigation (one member), the Commissioner of the Department of Children's Services (one member), and the presiding officer of the Board (one member, who is a representative of the board of paroles. The Board's presiding officer is appointed by and serves at the pleasure of the Commissioner of the Department of Correction). Tenn. Code. Ann. § 39-13-704(a) (2003).

[7]The propriety of using polygraph tests in treatment and monitoring programs for sex offenders is not at issue in this case.

[8]Tenn. Code Ann. § 39-13-705(b) (2003).

not mandate that trial courts consider polygraph examinations in determining sentencing issues. Polygraph examinations are not mandated or mentioned in the statutes relating to this required pre-sentence evaluation. Moreover, even though the standardized procedures developed and prescribed by the Board include the use of polygraph examinations,[9] trial courts are not bound by the Board's standardized procedures when determining what evidence is admissible at a sentencing hearing. Indeed, the admissibility of evidence at a sentencing hearing is governed by Tennessee Code Annotated section 40-35-209(b) (2003), which provides:

> The rules of evidence shall apply, except that reliable hearsay including, but not limited to, certified copies of convictions or documents, may be admitted if the opposing party is accorded a fair opportunity to rebut any hearsay evidence so admitted; provided, that this subsection shall not be construed to authorize the introduction of any evidence secured in violation of the constitution of the United States or of Tennessee.[10]

Tennessee Rule of Evidence 402 states that "[e]vidence which is not relevant is not admissible." It is well-established in the jurisprudence of this State that polygraph evidence is inherently unreliable, and therefore irrelevant and inadmissible. See State v. Torres, 82 S.W.3d 236, 252 n.20 (Tenn. 2002); State v. Irick, 762 S.W.2d 121, 127 (Tenn. 1988); Grant v. State, 374 S.W.2d 391, 392 (Tenn. 1964); Marable v. State, 313 S.W.2d 451, 456 (Tenn. 1958); State v. Campbell, 904 S.W.2d 608, 614-15 (Tenn. Crim. App. 1995) (citing additional cases). Recently, in State v. Hartman, this Court applied this longstanding rule and held that the trial court had not erred by refusing to allow the defendant to introduce the results of his polygraph examination as mitigation evidence at his capital sentencing hearing. 42 S.W.3d 44, 60 (Tenn. 2001). In so holding, we noted that the polygraph examination's "lack of any indicia of reliability means it is not probative." Id. We upheld the trial court's refusal to admit the polygraph test results even though the rules of evidence are not strictly applied in capital sentencing hearings. Id. This longstanding rule barring the admission of polygraph evidence applies with greater clarity in this non-capital sentencing hearing where the rules of evidence are expressly applicable. Indeed, justice would not be served by a rule that allowed prosecutors to introduce polygraph test results against a defendant in a non-capital sentencing hearing, while at the same time precluding a defendant from introducing such evidence in his own behalf during a capital sentencing proceeding. Therefore, we reaffirm our prior decisions and hold that polygraph examinations are unreliable and inadmissible. Consequently, polygraph examination results, testimony on such results, or testimony regarding a defendant's willingness or refusal to submit to a polygraph examination is not admissible during capital or non-capital sentencing

---

[9]At page 6, the Psychosexual Evaluation Manual, Pre-Sentence Psychosexual Evaluation: Adult Sexual Offenders, used by the Board in annual training, August 26, 2003, encourages assessors to "[u]se polygraph and physiological measures within your report, as available."

[10]This exception requires that the hearsay evidence, which is not admissible at other proceedings unless it falls within an exception, be excluded at sentencing if it is not reliable. This insistence on reliability of the evidence is consistent with our insistence here that inherently unreliable evidence, such as polygraph test results, be excluded even at sentencing.

hearings. Other states have reached the same conclusion on the use of polygraph examination results in sentencing. See People v. Liddell, 234 N.W.2d 669, 672 (Mich. App. 1975); State v. Anderson, 977 P.2d 315, 317 (Mont. 1999); Commonwealth v. Puchalski, 456 A.2d 569, 573 (Pa. Super. 1983). Therefore, when imposing sentences, trial courts should not consider polygraph examination results or any portion of a risk assessment report that relies upon polygraph examination results.

Applying this rule to the facts in this case, we conclude that the trial court erred by considering the results of Pierce's polygraph examination when determining his sentence. The trial court's statements made it clear that its decision to deny Pierce probation was greatly influenced by the polygraph examination results it accepted into evidence. This conclusion that the trial court erred does not end the inquiry, however, because the Court of Criminal Appeals concluded that, excluding the polygraph results, sufficient evidence in the record supported the trial court's denial of probation. For the reasons that follow, we agree with the Court of Criminal Appeals's conclusion.

### III. Trial Court's Sentencing Determination

The appealing party has the burden of showing that a sentence is improper. Tenn. Code Ann. § 40-35-401(d) (Sentencing Commission Comments) (2003). Our review of the trial court's sentence is de novo with a presumption of correctness. Tenn. Code Ann. § 40-35-401(d) (2003). However, the presumption of correctness which accompanies the trial court's action is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances. State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). If the trial court fails to comply with statutory sentencing directives, there is no presumption of correctness, and our review is simply de novo. State v. Poole, 945 S.W.2d 93, 93 (Tenn. 1997). In this instance, we review the trial court's sentencing decision de novo. Although the trial court erred in considering the results of the polygraph test, a de novo review of the record in this case reveals that Pierce is not a suitable candidate for probation.

Because attempted rape of a child is a Class B felony, there is no presumption in this case that the defendant is a favorable candidate for alternative sentencing. Tenn. Code Ann. §§ 39-12-207(a), 39-13-522(b), 40-35-102(6) (2003). The factors to be considered in sentencing are:
> 1) the evidence, if any, received at the trial and the sentencing hearing;
> 2) the pre-sentence report;
> 3) the principles of sentencing and arguments as to sentencing alternatives;
> 4) the nature and characteristics of the criminal conduct involved;
> 5) evidence and information offered by the parties on the enhancement and mitigating factors in §§ 40-35-113 and 40-35-114;
> 6) any statement the defendant wishes to make in the defendant's own behalf about sentencing.

Tenn. Code Ann. § 40-35-210(b) (2003).
In addition, a court should consider the potential or lack of potential for the rehabilitation or treatment of the defendant. Tenn. Code Ann. § 40-35-103(5) (2003).

We agree with the State that the initial risk assessment report submitted by Dr. Adler was properly considered by the trial court. The trial judge was mistaken when he stated in his order denying alternative sentencing that "the opinion of moderate or fair is intertwined with the polygraph." The report noted, as did Dr. Adler in his testimony, that Pierce had not taken a polygraph examination at the time Dr. Adler assessed Pierce as a fair to moderate risk to re-offend. Dr. Adler also qualified his conclusion that Pierce presented a moderate risk to re-offend by noting that his conclusion might be changed by the results of a polygraph examination. However, the risk assessment report was prepared without any polygraph examination having been administered, and the conclusions in it were based entirely on other information gathered in the evaluation. Nothing in the report or in Dr. Adler's testimony suggested that Dr. Adler's initial conclusions were influenced by the fact that Pierce had not taken a polygraph examination. In fact, Dr. Adler stated that even without a polygraph examination he would "stand on" his determination that Pierce posed a moderate risk to re-offend. The information contained in the risk assessment, the conclusions drawn in it, and Dr. Adler's testimony at the sentencing hearing were not tainted by the later polygraph examination. Thus, the initial risk assessment and Dr. Adler's testimony are appropriate sentencing considerations. This report and testimony clearly support a denial of probation. In particular, the report concluded that Pierce was a moderate risk for re-offending, that he showed minimal empathy for his victim, that he had a poor work history, and that he was socially isolated and emotionally constricted.

Other factors also supporting the trial court's denial of probation include: (1) the defendant's instances of untruthfulness; (2) the defendant's sexual attraction to minors, as documented in his risk assessment; and (3) the facts of his case, which indicate that the defendant committed the greater offense of rape of a child, an offense for which he would not have been eligible to receive probation.

The record contains evidence demonstrating the defendant's untruthfulness. The defendant denied past drug use, while his pre-sentence report indicated that he had been observed using marijuana. The defendant claimed that he had been so intoxicated on the night that he impregnated the victim that he could not remember the encounter. However, during his probation hearing, the defendant claimed that the victim had consented to the act. On another occasion, the defendant stated that after committing this sexual offense against the victim, he abstained from further sexual contact with her, even though he continued to "date" her for several weeks after their initial encounter. However, this claim is dubious given that the pre-sentence report reflects that the victim spent the night with the defendant on several occasions after the incident resulting in his conviction.

Also supporting a denial of probation is the defendant's sexual preference for minors, which was documented by the risk assessment report and in particular the results of the PPG, which indicated that the defendant "exhibited significant arousal responses to all females from infant to 17 years old, male infants, males 2-5 years old, and males 12-17 years old," but that he exhibited no "clinical significant arousal" to adult women, the age group he purports to prefer. Dr. Adler testified that the results of his PPG were consistent with those of repetitive offenders.

Finally, the facts and circumstances surrounding the defendant's crime also support the denial

of probation. See Tenn. Code Ann. § 40-35-210(b)(4) (2003). When determining whether probation is appropriate it is proper "to look behind the plea bargain and consider the true nature of the offenses committed." State v. Hollingsworth, 647 S.W.2d 937, 939 (Tenn. 1983). Although the defendant pleaded guilty to attempted rape of a child, it is clear that the defendant actually committed the offense of rape of a child as he admitted to impregnating his twelve-year-old victim. Had the defendant been convicted of rape of a child, he would have been ineligible for probation and required to serve one hundred percent of a fifteen- to twenty-five-year sentence. See Tenn. Code Ann. §§ 39-13-522(b), 40-35-112(a)(1), 39-13-532(b) (2003). Instead, the defendant pleaded guilty to the lesser offense of attempted rape of a child and received an eight-year sentence, the minimum sentence for which he was eligible. See Tenn. Code Ann. § 40-35-112(a)(2) (2003). As a Range I standard offender, he will become eligible for parole after serving only thirty percent of his eight-year sentence. Accordingly, the circumstances of the offense support the denial of probation.

## IV.  Conclusion

For the reasons stated herein, the trial court erred by considering the polygraph examination results when denying the defendant's request for probation. Nonetheless, the record supports the denial of probation and the sentence imposed. Accordingly, the judgments of the trial court and Court of Criminal Appeals are affirmed on the separate grounds stated. It appearing that the defendant is indigent, costs of this appeal are taxed to the State of Tennessee.

 

_____
FRANK F. DROWOTA, III, CHIEF JUSTICE