IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs December 7, 2010

**STATE OF TENNESSEE v. WAYNE BOYKIN**

**Direct Appeal from the Circuit Court for Madison County**
**No. 08-375    Roy B. Morgan, Judge**

_____

**No. W2010-00719-CCA-R3-CD  - Filed September 26, 2011**

_____

Following a bench trial, the defendant, Wayne Boykin, was convicted of fraudulently using a credit card to obtain goods with a value in excess of $60,000, which is punishable as a Class B felony.  The Circuit Court of Madison County sentenced the defendant to ten years incarceration as a Range I, standard offender.  On appeal, the defendant maintains that (1) the evidence was insufficient to support his conviction, and (2) his sentence was excessive. After careful review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the Court, in which THOMAS T. WOODALL and ALAN E. GLENN, JJ., joined.

Joseph T. Howell, Jackson, Tennessee (on appeal); George Morton Googe, District Public Defender; and Susan Korsnes, Assistant Public Defender (at trial), for the appellant, Wayne Boykin.

Robert E. Cooper, Jr., Attorney General & Reporter; Cameron L. Hyder, Assistant Attorney General; James G. Woodall, District Attorney General; and Jody S. Pickens, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

The defendant was convicted of one count of fraudulently using a Fleet One charge card in violation of Tennessee Code Annotated section 39-14-105 (2008), which was provided to him by his former employer, Quality Outdoor Products, while he was a driver for the company.  At his trial on September 30, 2008, the defendant conceded that he used the card to make some unauthorized purchases but contested the total amount of the charges for

which he was responsible (and, therefore, the severity of the punishment merited by his offense).

During the State's case-in-chief, Michael Nicolay, the operations manager of Quality Outdoor Products in Jackson, Tennessee, testified that the company employed drivers to transport components to their installation locations across the southeast. Each driver was issued a credit card and was instructed that the card was to be used for business purposes only. Specifically, the card was to be used solely for purposes of purchasing fuel or motor oil for use in the company trucks. The defendant was hired as a truck driver on March 28, 2006, and was issued a Fleet One charge card. At the time the defendant's card was issued, the company had six Fleet One charge cards labeled Card 1 through Card 6, and the defendant was issued Card 1. Mr. Nicolay stated that, in addition to cautioning the defendant that the charge card was to be used for business purposes only when he first gave the card to the defendant, he again reminded the defendant that the card was to be used to purchase gas and motor oil only at some point later during the defendant's employment and cautioned the defendant against using the card to purchase any other items, even food.

Mr. Nicolay stated that the defendant's job was based out of Jackson, Tennessee, and that the defendant made deliveries from that location. Mr. Nicolay further testified that the defendant's employment was terminated on October 7, 2007, after he was seen by another employee loading company materials into his truck in the middle of the night without authorization. At the time of his termination, the defendant surrendered a copy of the Fleet One charge card that he had been issued.

In March 2008, the company's accountant contacted Mr. Nicolay about some unusual activity on Card 1. Mr. Nicolay said that he then reviewed the charge card's records and discovered a multitude of unauthorized charges spanning from April 2006 to March 2008 – well after the defendant's relationship with the company had been terminated. Many of the charges were for unleaded fuel at the Horizon gas station and the Love's Travel Stop, both located in Jackson, Tennessee. Mr. Nicolay testified that the company had no gasoline-burning vehicles at its Jackson location. Consequently, Mr. Nicolay concluded that all fuel charges made using Card 1, other than those for diesel fuel, were unauthorized.

Mr. Nicolay stated that soon after the defendant's termination, some employees at the company's site in Louisiana notified him that they had lost one of their fuel cards. Mr. Nicolay sent them the defendant's old card, Card 1, to use until Fleet One could issue them a new card. During the month of October, 2007, while the card was physically located in Louisiana, unauthorized charges continued to accumulate on the account for purchases made in Jackson, Tennessee, and West Memphis, Arkansas. After a few weeks, employees from Louisiana returned the card to the company in Jackson, Tennessee. Since October of 2007,

Mr. Nicolay testified that no company employee had been issued Card 1, and that all charges on the card since that time were unauthorized.

Following his discovery of the unauthorized charge card activity, Mr. Nicolay testified that he contacted the Jackson police and provided them with documentation showing that the unauthorized purchases on the card occurred predominately at the Horizon and Love's gas stations in Jackson, Tennessee. Both during the ensuing investigation and while on the stand, Mr. Nicolay identified the defendant from a photograph taken at what appeared to be the Love's Travel Stop in Jackson, dated March 24, 2008. He testified that records reflected that charges were made on Card 1 at the Love's Travel Stop in the amount of $219.99 on March 24, 2008, and in the amount of $359.98 on March 28, 2008. Mr. Nicolay testified that the amount of the unauthorized charges made on Card 1 totaled $48,250.30 at locations in Madison County, $14,576.96 at locations in Haywood County, and $3,712.53 in miscellaneous counties, including out-of-state transactions in Arkansas and Georgia.

Mr. Ben Moyer was the general manager of the Love's Travel Stop located in Madison County, Tennessee. He testified that Jackson Police Department Investigator Chad French approached him and requested that he retrieve the store's video surveillance tapes from March 24 to March 28, 2008, and that he had retrieved and reviewed those tapes. Mr. Moyer identified the defendant as being the subject of two recorded store transactions occurring on March 24 and March 28, 2008. Both transactions involved the purchase of Garmon GPS units. Mr. Moyer testified that the store's surveillance video taken at 6:17 p.m. on March 24, 2008, showed one of the store's sales associates selling a GPS unit to the defendant. During this transaction, the defendant swiped a credit card into the store's electronic reader and typed information such as his mileage and his driver's license number into a key pad in front of the register. Mr. Moyer testified that this video showed that the defendant signed a sales receipt on this occasion, but he was unable to locate that receipt during a subsequent search of the company's records.

Mr. Moyer testified that at 12:12 p.m. on March 28, 2008, he served the defendant while working as a cashier at the same location. Mr. Moyer recalled that he sold the defendant two GPS units and that the transaction stuck out in his mind because it was very rare for the store to sell two such units at one time. Mr. Moyer recalled that the defendant paid for the units using a Fleet One charge card from Quality Outdoor Products and signed the receipt. The receipt from this transaction was entered into evidence.

Thereafter, Investigator Chad French of the Financial Crimes Unit of the Jackson Police Department took the stand and testified that he reviewed the records concerning charges made on Card 1 out of the series of charge cards that had been issued to Quality Outdoor Products by the Fleet One Company and that those records reflected that the card had

been used at various truck stops in Madison County, including the Horizon Travel Center and Love's Travel Center. The officer testified that the Horizon Travel Center closed during the intervening time but that he was able to obtain and review surveillance video from the Love's Travel Center, which had previously been entered into evidence during Mr. Moyer's testimony. Investigator French testified that he showed still frames from this video footage to Mr. Nicolay during the course of his investigation and that Mr. Nicolay identified the defendant as the person depicted in the photographs.

Investigator French testified that he interviewed the defendant on April 3, 2008, at the Madison County Criminal Justice Complex where the defendant was being incarcerated on the present charges. The officer said that after he advised the defendant of his rights, the defendant waived his rights and made the following statement:

> I worked at Quality Outdoor Products for about two years and worked as a driver. I was issued a Fleet One charge card by my employer to pay for work-related expenses such as fuel. About three or four weeks before I stopped working at Quality Outdoor Products, I started making unauthorized transactions with the Fleet One charge card. At times I would pay for fuel with the Fleet One card that was put in other people's vehicles and they would pay me cash. At one point I lost my Fleet One card and was issued another card and somehow ended up with two cards. I turned in one card when I stopped working at Quality Outdoor and kept a second card I had. I continued to use the additional Fleet One card I had after my employment ended with Quality Outdoor. I most often used a Fleet One card at the two Horizon travel stations in Jackson and at Love's Truck Stop. I purchased some GPS systems at Love's with the Fleet One card and sold them for cash. I continued to use the Fleet One card until a couple of days ago when I tried to use the card and it was declined. After it was declined, I cut it up and threw it away.

Before leaving the stand, Investigator French testified that it was his understanding that every charge card issued to Quality Outdoor Products had the same PIN number and that this PIN number was never changed, even after a card was reported lost or stolen. Following this testimony, the State rested its case.

Thereafter, the defendant took the stand in his own defense. The defendant testified that while employed at Quality Outdoor Products, he temporarily lost the Fleet One charge card that had been issued to him and that he contacted Fleet One and obtained a replacement card with his employer's permission. He stated that although he surrendered one of these cards to the company upon his termination, he retained and continued to use the other card. The defendant further testified that, unbeknownst to him, his son also obtained and used his

card on several occasions. The defendant admitted that he confessed to Investigator French that he made unauthorized charges on the card a "couple" of times and that he used the card to purchase some GPS units. The defendant stated that he believed that he told the officer that the total amount of unauthorized charges he made was between $1000 and $1500. The defendant also asserted on the stand that he drove gasoline-burning vehicles several times in the course of his employment at Quality Outdoors products, thereby implying that not every non-diesel fuel purchase made on the card during the term of his employment was fraudulent.

On cross-examination, the defendant initially testified that when he turned in his Fleet One charge card following his termination, he had forgotten that the second card was at his home. He later testified that he received the second card in the mail following his termination. The defendant acknowledged that according to his statement to the police, he had both cards when his employment was terminated. The defendant explained that when he spoke to the officer, he could not remember when he received the second card and that he told the officer that he might have had the second card when he was terminated.

The defendant admitted that he had purchased GPS units with the card. However, the defendant claimed to have lied to Investigator French when he stated that he used the card to purchase gas for others in exchange for cash. Instead, the defendant maintained that his son was responsible for incurring any such charges appearing on the card. The defendant testified that following his arrest, his son told him that he had been using the card. He said that when he talked to the officer, he knew that his son had been using the card but was unaware of the extent to which his son had used it. The defendant also denied that he used the card to make unauthorized purchases in other states. The defendant admitted to using the card to purchase "[a] couple hundred" gallons of gasoline but maintained that these unauthorized gas purchases occurred following his termination.

After the defendant completed his testimony, his son, Wayne Boykin, Jr., took the stand. The defendant's son testified that he took the Fleet One charge card out of the defendant's bag and used it on occasion without the defendant's permission. The defendant's son said the PIN number was written outside the package in which the defendant kept the card. He maintained that he used the card to purchase gasoline for his vehicle and for the vehicles of others in exchange for cash. While on the stand, the defendant's son reviewed records listing the various purchases that had been made using the card and indicated which of the charges he believed he had incurred. The defendant's son indicated that he used the card to make purchases totaling $10,253.79 through April of 2007, and may also have been responsible for additional charges incurred after that time.

On cross-examination, the defendant's son testified that he was unaware of the precise charges against the defendant until after the defendant was released from jail. The

defendant's son also initially claimed that he had never informed his father of his use of the card until after his father's arrest, explaining that after his father was released, the defendant approached him and questioned him about using the card. However, the defendant's son later claimed that his father was aware that on at least one occasion prior to his father's termination he used the card to purchase gasoline for his own vehicle. The defendant's son continued to maintain that his father did not know that he was also using the card to purchase gasoline for other individuals including his friends. The defendant's son further testified that he had no memory of the exact dates, times, and amounts of the purchases he accrued on the card. The defendant's son claimed to have identified which transactions were his based primarily upon whether the charges were made in Jackson. When it was pointed out that some of the purchases he claimed to have made during his direct testimony occurred during school hours, the defendant's son admitted that he could not have been responsible for those purchases. Moreover, although the defendant's son indicated on direct examination that he was responsible for purchases in Jackson, Georgia; West Memphis, Arkansas; and Tuscumbia, Alabama; under cross-examination, the defendant's son conceded that he had never been to those locations. During re-direct examination, the defendant's son claimed that although he may have made mistakes with respect to some of the individual charges that he claimed he incurred using the charge card, he had done his best to be accurate in light of his memory.

At the conclusion of the bench trial, on September 30, 2008, the trial court found the defendant guilty as charged of one count of fraudulently using a credit card for purposes of obtaining property, credit, or services in violation of Tennessee Code Annotated section 39-14-118. The trial court found the value of the property, credit, or services at issue to exceed $60,000, thereby rendering the offense punishable as a Class B felony. At a sentencing hearing held on November 6, 2008, the State presented the testimony of Jerry Holt, the President of Quality Outdoor Products, concerning the harm done to the company by the defendant's activities. Mr. Holt testified that a substantial amount of money had been taken from the company and requested that the trial court impose the maximum sentence of incarceration along with an order to pay full restitution. Following this testimony, the defendant took the stand and stated that he was very sorry for what had happened in this case. The defendant claimed that he had three children living at home who relied on him for support. The defendant further claimed that he had maintained a reasonably consistent work history, was still eligible to drive a truck, and would pursue that as a form of living if he were released from jail. On cross-examination, the defendant admitted that he had been in bankruptcy for the past six to seven years and that his ability to pay any restitution would be further diminished due to his felony conviction on the charge before the court.

At the conclusion of the sentencing hearing, the trial court sentenced the defendant to ten years incarceration as a Range I, standard offender to be served at 30%. The court also ordered the defendant to pay $64,000 in restitution. The judgment was entered on November

10, 2008.

More than a year later, on November 16, 2009, the defendant filed a motion for a new trial. On that same date, the trial court entered an agreed order granting the defendant the right to seek a delayed appeal on the grounds "that neither a Motion for a New Trial or a Notice of Appeal was filed in that case through no fault of the Defendant." The agreed order gave the defendant thirty days to file a motion for a new trial and/or notice of appeal. The defendant filed another motion for new trial on November 23, 2009, claiming that his sentence was excessive and that the evidence was insufficient to support his conviction. On March 22, 2010, the trial court entered an order denying the motion for new trial. The defendant filed a notice of appeal on March 23, 2010.

## ANALYSIS

The defendant raises two issues on appeal: a challenge to the sufficiency of the evidence to support his conviction and a challenge to the length of the sentence. We reject both claims.

## I. SUFFICIENCY OF THE EVIDENCE

The defendant claims that the evidence was insufficient to support his conviction for fraudulent use of a credit card pursuant to Tennessee Code Annotated section 39-14-118(b), which renders it a crime to "use[], or allow[] to be used, a credit or debit card or information from that card, for the purpose of obtaining property, credit, services or anything else of value with knowledge that . . . [f]or any . . . reason the use of the card is unauthorized by either the issuer or the person to whom the credit or debit card is issued." T.C.A. § 39-14-118(b)(4). However, the defendant does not dispute that these statutory elements are satisfied, and we agree that the evidence summarized above supports the trial judge's determination that the defendant violated section 39-14-118(b).

Instead, the defendant challenged at trial and continues to challenge on appeal only the amount of the unauthorized activity used by the trial court to determine the severity of his punishment. Tennessee Code Annotated section 39-14-118(b) provides that the "[f]raudulent use of a credit or debit card is punishable as theft pursuant to [section] 39-14-105, depending on the amount of property, credit, goods or services obtained." Tennessee Code Annotated section 39-14-105 provides that "[t]heft of property or services is . . . [a] Class C felony if the value of the property or services obtained is ten thousand dollars ($10,000) or more but less than sixty thousand dollars ($60,000)," but is a "Class B felony if the value of the property or services obtained is sixty thousand dollars ($60,000) or more."

The defendant claims that the evidence is insufficient to show that the amount of his unauthorized use of his employer's credit card exceeded $60,000, and consequently that the evidence is insufficient to support his conviction. However, the defendant's putative arguments concerning the sufficiency of the evidence pertaining to the extent of his unauthorized charge card use are in reality simply disguised challenges to the venue and jurisdiction of the trial court. Unlike the defendant's position at trial, where he used both his own and his son's testimony to disclaim responsibility for more than $10,253.79 of unauthorized transactions, on appeal the defendant is not challenging the sufficiency of the evidence to support the conclusion that he actually committed any of the unauthorized transactions. Nor could he have prevailed by bringing such a claim on this record, as matters such as resolving conflicting trial testimony and assessing the credibility of witnesses (including both the defendant and his son) are the bailiwick of the trial judge, and we will not disturb his findings on appeal. *See, e.g., State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011).

Rather, the defendant is asserting that the trial court lacked authority to adjudicate and punish some of these unauthorized transactions, and that if those transactions are removed, the total value obtained from his fraudulent use of his former employer's credit card no longer exceeds $60,000. His challenge to the trial court's inclusion of unauthorized transactions that physically occurred in other counties and/or outside of the State of Tennessee in the court's calculation concerning the severity of his punishment for violating section 39-14-118(b) has nothing to do with the sufficiency of the evidence used to convict him of violating that particular statute. Rather, it is a challenge to the venue and jurisdiction of the adjudicating court with respect to the severity of his offense as described in his indictment. The defendant essentially asserts that the trial court was the improper venue with respect to $14,576.96 of the unauthorized charges occurring in Haywood County, Tennessee, and that the trial court lacked jurisdiction over some $3,712.53 of the unauthorized charges that occurred in other counties, many of which were outside of Tennessee. While we maintain a healthy dose of skepticism with respect to both of those assertions in light of the relevant precedent and Tennessee Code Annotated section 39-11-103, it is not necessary to resolve either claim on the merits in order to dispose of the defendant's appeal.

With respect to the unauthorized charges occurring in Haywood County, Tennessee, the defendant's jurisdictional argument is tantamount to a mere claim of improper venue which, although constitutional, is not an element of an offense and must only be established by a preponderance of evidence. *See* Tenn. R. Crim. P. 18(a); *State v. Young*, 196 S.W.3d 85, 101 (Tenn. 2006) ("Proof of venue is necessary to establish the jurisdiction of the court, but it is not an element of any offense."); *State v. Jerry Davis*, No. 3, 1992 Tenn. LEXIS 461, at *4 (Tenn. June 22, 1992) ("Venue is not an ingredient of a criminal offense. It is only necessary to prove venue to establish the fact that the court trying the criminal case has

jurisdiction."). This venue claim has been waived. The defendant raised only two issues in his motion for new trial – the sufficiency of the evidence and whether or not his punishment was excessive. Because venue is not an element of any offense, *see Young*, 196 S.W.3d at 101; *Davis*, 1992 Tenn. LEXIS 461, at *4, it is not an issue that may be properly reviewed pursuant to a sufficiency of the evidence challenge. The defendant's failure to specifically challenge venue in his motion for new trial waived his ability to argue his venue concerns on appeal.

The defendant's argument concerning the trial court's inclusion of unauthorized transactions that physically occurred outside the State of Tennessee is effectively a challenge to the trial court's territorial jurisdiction. Territorial jurisdiction is a more fundamental concern than venue and recognizes that a "'state's criminal law is of no force and effect beyond its territorial limits.'" *State v. Legg*, 9 S.W.3d 111, 114-16 (Tenn. 1999) (*quoting Coffee v. Peterbilt of Nashville, Inc.*, 795 S.W.2d 656, 658-59 (Tenn. 1990)). Territorial jurisdiction must be proven beyond a reasonable doubt. *See State v. Beall*, 729 S.W.2d 270, 271 (Tenn. Crim. App. 1986). However, the defendant fails to state a claim on which this court can grant relief with respect to territorial jurisdiction. Even if the value of the defendant's fraudulent use of his employer's charge card was reduced by the entire amount of the charges that were accrued in other states, the value of the property that was fraudulently obtained would remain greater than $60,000. Consequently, even if he were to prevail on this issue, he cannot demonstrate any entitlement to a lesser category of punishment under the applicable statutes. *See* T.C.A. §§ 39-14-105(5); 39-14-118(b); 39-14-118(c)(1). The defendant's claims concerning venue and territorial jurisdiction, couched in terms of a challenge to the sufficiency of evidence, are therefore denied.

## II. SENTENCING

The defendant maintains that the length of his sentence is excessive. Specifically, he challenges the trial court's application of one enhancement factor and its refusal to consider any mitigating factors. We agree that the trial court erroneously considered one of the three enhancement factors that it used in reaching its determination concerning the defendant's sentence. Nonetheless, we affirm the defendant's sentence.

The burden of demonstrating that a sentence is erroneous is placed upon the appealing party. *State v. Carter*, 254 S.W.3d 335, 344 (Tenn. 2008). This court's review of a trial court's sentence is *de novo* with a presumption that the trial court's determinations are correct. *Id.* This presumption "'is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances.'" *Id.* at 344-45 (*quoting State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991)). "If, however, the trial court applies inappropriate mitigating and/or enhancement factors or otherwise fails to follow

the Sentencing Act, the presumption of correctness fails" and "'our review is simply *de novo*.'" *Id.* at 345 (*quoting State v. Pierce*, 138 S.W.3d 820, 827 (Tenn. 2004)) (italics supplied).

The trial court is free to select any sentence within the applicable range so long as the length of the sentence is "'consistent with the purposes and principles of the Sentencing Act.'" *Id.* at 343 (*quoting* T.C.A. § 40-35-210(d) (2006)). In sentencing a defendant, the trial court is required to consider the following:

> (1) The evidence, if any, received at the trial and the sentencing hearing;
> (2) The presentence report;
> (3) The principles of sentencing and arguments as to sentencing alternatives;
> (4) The nature and characteristics of the criminal conduct involved;
> (5) Evidence and information offered by the parties on the mitigating and enhancement factors set out in [sections] 40-35-113 and 40-35-114;
> (6) Any statistical information provided by the administrative office of the courts as to the sentencing practices for similar offenses in Tennessee; and
> (7) Any statement the defendant wishes to make in the defendant's own behalf about sentencing.

T.C.A. § 40-35-210(b). The trial court's weighing of the various mitigating and enhancement factors has been left to the trial court's sound discretion. *Carter*, 254 S.W.3d at 345. "Since the Sentencing Act has been revised to render these factors merely advisory, that discretion has been broadened." *Id.* If the trial court recognizes and enunciates several applicable enhancement factors, it does not abuse its discretion if it does not increase the sentence beyond the minimum on the basis of those factors. Similarly, if the trial court recognizes and enunciates several applicable mitigating factors, it does not abuse its discretion if it does not reduce the sentence from the maximum on the basis of those factors. Therefore, appellate courts are left with a very narrow set of circumstances in which they might find that a trial court has abused its discretion in setting the length of a defendant's sentence. *Id.* at 345-46.

The defendant was convicted as a Range I offender of a Class B felony. Therefore, his applicable sentencing range was eight to twelve years. *See* T.C.A. §§ 39-14-105(5); 39-14-118(b); 39-14-118(c)(1); 40-35-112(a)(2) (2008). The trial court sentenced the defendant to ten years incarceration at 30%, which falls within the applicable sentencing range.

However, in sentencing the defendant, the trial court applied three enhancement factors: (1) that the defendant had a previous history of criminal convictions; (2) that the defendant, before trial or sentencing, failed to comply with the conditions of a sentence involving release into the community; and (3) that the defendant was on probation at the time

that the felony was committed. *See* T.C.A. §§ 40-35-114(1); 40-35-114(8); 40-35-114(13). Although acknowledging that the trial court correctly applied the criminal history enhancement factor, the defendant contends that the trial court erred in applying the second factor because it was based solely on the exact same violation (the offense presently before the court) of the exact same probation (imposed when the defendant pled guilty to fraudulently using a credit card to receive property, credit, goods or services in an amount valued under $500 on December 12, 2007) that the trial court used to apply the third enhancement factor, without any demonstrable additional history of unwillingness to comply with the conditions of a sentence involving release into the community.

The State concedes error, and we agree. The trial court applied factor (8) because the defendant was on probation at the time he committed the present offense, while also applying enhancement factor (13) because the defendant was on that same probation at the time that he committed the present offense. *See* T.C.A. § 40-35-114(13). Applying factor (8) solely based on the same violation of the same probation used to apply enhancement factor (13), without any additional showing of the defendant's unwillingness to comply with the terms of a sentence involving his release into the community, is tantamount to applying the same enhancement factor twice. Accordingly, the trial court should not have applied enhancement factor (8) under these circumstances.

The defendant also asserts that the trial court erred in failing to consider as a mitigating factor the fact that his conduct did not cause or threaten serious bodily injury. *See* T.C.A. § 40-35-113(1). However, the trial court stated that the defendant did not file any mitigating factors for its consideration, and nothing in the record indicates that the defendant argued this mitigating factor to the trial court. The issue could therefore be deemed waived. *See* T.R.A.P. 36(a).

However, regardless of the situation with respect to the presence of absence of mitigating factors, our determination that the trial court applied an inappropriate enhancement factor means that this court will review the sentence imposed by the trial court *de novo*, with no presumption of correctness. *See Carter*, 254 S.W.3d at 345. After a thorough review of the record and the arguments of the parties, we agree with the trial court that a ten-year sentence was appropriate. As the defendant concedes, it is appropriate to consider his prior history of criminal convictions and behavior in setting his sentence. The defendant's presentence report reflects a conviction for second degree murder in June of 1984, a misdemeanor conviction for fraudulent use of a credit card in December of 2007, and convictions for numerous other minor offenses. Moreover, the defendant continued to engage in ongoing fraudulent use of the victim's charge card while on probation for committing precisely this same type of offense. While we acknowledge that the defendant's behavior did not cause or threaten serious bodily injury, we find that the sentence imposed below was

appropriate in light of the governing law and the totality of the circumstances of this case. Consequently, we affirm the sentence imposed by the trial court.

## CONCLUSION

For the reasons given above, we affirm the judgment of the trial court.

_____
JOHN EVERETT WILLIAMS, JUDGE