IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs April 10, 2012

## STATE OF TENNESSEE v. HARRIET ROBERTSON FORREST

**Appeal from the Circuit Court for Madison County**
**No. 10634      Donald H. Allen, Judge**

_____

**No. W2011-01754-CCA-R3-CD  - Filed June 11, 2012**

_____

The Defendant, Harriet Robertson Forrest, was indicted on nine counts of identity theft, a Class D felony. The Defendant pleaded guilty to all nine counts. As part of the plea agreement, the Defendant received a four-year sentence for each conviction as a Range II multiple offender with the sentences to run concurrently. The plea agreement provided that the manner of service would be determined by the trial court. Following a sentencing hearing, the trial court ordered the Defendant to serve her effective four-year sentence in confinement. The Defendant appeals, arguing that the trial court erred by denying her request for an alternative sentence. Upon review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

JEFFREY S. BIVINS, J., delivered the opinion of the Court, in which JOHN EVERETT WILLIAMS and CAMILLE R. MCMULLEN, JJ., joined.

Gregory D. Gookin, Assistant Public Defender, Jackson, Tennessee, for the appellant, Harriet Forrest.

Robert E. Cooper, Jr., Attorney General & Reporter; Meredith Devault, Senior Counsel; Jerry Woodall, District Attorney General; Brian Gilliam, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### I. Background Facts & Procedure

On October 4, 2010, the Madison County Grand Jury indicted the Defendant on nine counts of identity theft. See Tenn. Code Ann. § 39-14-150. The Defendant pleaded guilty

to all nine counts as a Range II multiple offender at a plea submission hearing on March 7, 2011. The plea agreement provided that the length of the Defendant's sentence would be four years at 35% with each sentence to run concurrently. The manner of service and amount of restitution were to be determined by the trial court at a sentencing hearing.

At the plea submission hearing, the State gave the following summary of the factual basis for the Defendant's plea:

> [T]he State would show . . . that these are nine counts all of the same charge of [i]dentity [t]heft. The difference is the dates.
>
> . . . .
>
> The State would show that in this case the [D]efendant was actually employed by Ms. [Claudia] Baucum and her step-daughter, Ms. Brenda Fowler, who is present in the courtroom. [The Defendant] was employed to sit with Ms. Baucum who had had a stroke and needed some care and this [D]efendant was employed to come into the home and sit with her. That employment ended on January the 4th of 2010. At that time no one had noticed the debit card of Ms. Baucum was actually missing. Nobody knew until later when Region's Bank informed Ms. Fowler, Ms. Baucum's step-daughter, that some charges had been made on her Region's checking account using her debit card and they were showing that the PIN number was actually used to make some transactions. Investigators with the Jackson Police Department were able to trace the charges . . . and also found some video tape from the Eastgate Package and Liquor Store selling to this [D]efendant on those nine occasions using the debit card of Ms. Baucum and entering the PIN number to make some purchases. These are nine counts for the nine different times that she purchased items from the Eastgate Package and Liquor Store back in April of 2010. Ms. Baucum[,] the victim in this case, she did pass away back in August of last year and so that's why representing her is Ms. Fowler, her step-daughter, who's present in the courtroom.

The trial court accepted the plea. In admitting her guilt of the charged offenses, the Defendant said, "I'm very remorseful and willing to do whatever I have to do to make th[is] up to [the victim]." At the conclusion of the plea hearing, the trial court ordered the Defendant to submit to drug testing later that day, and the Defendant intimated to the court that she would be able to pass a drug test. However, the Defendant did not appear for drug testing as ordered, and the court issued an instanter capias for the Defendant's arrest.

A sentencing hearing was held July 25, 2011. The Defendant testified that she worked "private duty sitting" with the victim after the victim suffered a stroke. The Defendant worked in the victim's stepdaughter's home and was employed in that capacity from August 2009 until January 2010. On a prior occasion, the victim gave the Defendant permission to use her debit card. However, the Defendant admitted that she later took the debit card and used it without the victim's permission. The Defendant estimated that she had taken $3,000 through the use of the victim's debit card.

In addition to employing the Defendant, the victim's stepdaughter also had helped the Defendant obtain employment as a janitor at a local church. After the victim died, the Defendant met with the victim's stepdaughter and their church pastor and apologized. In her victim impact statement, the victim's stepdaughter said that she felt betrayed after hiring the Defendant to take care of her ailing stepmother. The Defendant told the court that she had not paid anything to the victim yet because she had been told to wait to do so until the matter was resolved in court.

The Defendant admitted that she had not appeared for the court-ordered drug test on the day of the guilty plea hearing. She claimed that her husband had spinal stenosis and had fallen and been taken to the emergency room. The Defendant, however, admitted that she would have tested positive for marijuana had she taken the drug test on the day of the plea submission hearing. She acknowledged that she had a drug problem and that she had used cocaine off and on for twenty years. Although the Defendant had been to two in-patient drug treatment facilities in the past, she continued to use illegal drugs. She also had been in prison twice but had not participated in drug treatment programs while incarcerated. Yet, she told the court that she did not want to do drugs anymore.

Reviewing the presentence report, the trial court found that the Defendant had six prior felony convictions and three prior misdemeanor convictions. Moreover, the trial court found that eight of the nine prior convictions "involve the same type of dishonesty for which [the Defendant is] being . . . sentenced for here today." The trial court found that the Defendant's convictions fit "[a] pattern that has existed for many, many years." The trial court also found the Defendant's illegal drug use troubling. Specifically, the trial court noted that the Defendant had failed to appear for a court-ordered drug screen after telling the court she would be able to pass a drug test, which she later admitted was untrue. Based on these facts, the trial court applied as an enhancement factor that the Defendant had a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate sentencing range. See Tenn. Code Ann. § 40-35-114(1).

The trial court also noted from the presentence report the Defendant's history of probation violations and found as an enhancement factor that before trial or sentencing in this

case the Defendant had failed to comply with the conditions of a sentence involving release into the community. See Tenn. Code Ann. § 40-35-114(8). Lastly, the trial court found as an enhancement factor that the Defendant had abused a position of private trust by stealing from an elderly victim in poor health whom the Defendant had been hired to care for. See Tenn. Code Ann. § 40-35-114(14).

In looking at possible mitigating factors, the trial court acknowledged the Defendant's request for alternative sentencing, the fact that she pleaded guilty, and her expressed desire for drug treatment and rehabilitation. The trial court, however, ultimately concluded that no mitigating factors applied because the Defendant had not made restitution and continued to use illegal drugs even after her arrest.

After reviewing the purposes and principles of the sentencing guidelines, the trial court found that the Defendant's continued drug use and dishonesty to the court reflected poorly on her potential for rehabilitation. See Tenn. Code Ann. § 40-35-103(5). The trial court also determined that other measures less restrictive than confinement had been unsuccessful in the past and concluded that the Defendant would not follow the terms of probation. See Tenn. Code Ann. § 40-35-103(1)(C). The trial court ultimately decided that the Defendant should serve her negotiated sentence of four years at 35% in complete confinement. The trial court also set restitution in the amount of $4,350.82.[1]

On appeal, the Defendant argues that the trial court erred by denying her request for alternative sentencing. Specifically, the Defendant argues that the trial court should have granted her request for alternative sentencing because she showed remorse for her actions, admitted that she abused her position of private trust, expressed a willingness to repay the victim, and "asked for drug treatment and strict probationary supervision as tools to help her accomplish her goals."

## II. Standard of Review

The applicable standard of review when a defendant challenges the length, range, or manner of service of a sentence is de novo on the record with a presumption of correctness. Tenn. Code Ann. § 40-35-401(d) (2006). However, this presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). If the trial court did not do so, then the presumption fails, and this Court's review is de novo with no presumption of correctness. State v. Pierce, 138 S.W.3d 820, 827 (Tenn. 2004). However, if the trial court considered the statutory criteria, imposed a lawful but not

---

[1] The Defendant does not appeal the amount of restitution as determined by the trial court.

excessive sentence, stated its reasons for the sentence on the record, and its findings are supported by the record, then this Court is bound by the trial court's decision. State v. Carter, 254 S.W.3d 335, 346 (Tenn. 2008). On appeal, the party challenging the sentence has the burden of demonstrating that it is improper. Tenn. Code Ann. § 40-35-401, Sentencing Comm'n Cmts.; Carter, 254 S.W.3d at 344.

In conducting a de novo review of a sentence, this Court must consider the following: (a) any evidence adduced at the trial and the sentencing hearing; (b) the presentence report; (c) the principles of sentencing and arguments of counsel regarding sentencing alternatives; (d) the nature and characteristics of the criminal conduct; (e) any enhancement or mitigating factors as provided in Tennessee Code Annotated sections 40-35-113 and 40-35-114; (f) any statistical information provided by the Administrative Office of the Courts as to Tennessee sentencing practices for similar offenses; and (g) any statement made by the defendant on his or her own behalf about sentencing. Tenn. Code Ann. § 40-35-210(b) (2006); see also Carter, 254 S.W.3d at 343.

### III. Analysis

A court no longer presumes that a defendant is a favorable candidate for alternative sentencing under the revised Tennessee sentencing statutes. Carter, 254 S.W.3d at 347 (citing Tenn. Code Ann. § 40-35-102(6)). Rather, the advisory sentencing guidelines now provide that a defendant who does not possess a criminal history showing a clear disregard for society's laws and morals, who has not failed past rehabilitation efforts, and who "is an especially mitigated or standard offender convicted of a Class C, D or E felony, should be considered as a favorable candidate for alternative sentencing options in the absence of evidence to the contrary." Tenn. Code Ann § 40-35-102(5)-(6)(A) (Supp. 2007). Additionally, a trial court is "not bound" by the advisory sentencing guidelines; rather, it "shall consider" them. Id. § 40-35-102(6)(D).

In determining whether to impose a sentence of confinement, the trial court should consider the following:

(A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

(B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or

(C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant.

Tenn. Code Ann. § 40-35-103(1) (2006); see also Carter, 254 S.W.3d at 347. Additionally, the principles of sentencing reflect that the sentence should be no greater than that deserved for the offense committed and should be the least severe measure necessary to achieve the purposes for which the sentence is imposed. Tenn. Code Ann. § 40-35-103(2), (4). The court also should consider a defendant's potential for rehabilitation or lack thereof when determining whether an alternative sentence is appropriate. Id. § 40-35-103(5).

By the terms of her plea agreement, the Defendant was sentenced as a Range II multiple offender. Thus, she is not a favorable candidate for alternative sentencing. See Tenn. Code Ann. § 40-35-102(6)(A). Even though the Defendant is not a favorable candidate, she is nonetheless eligible for an alternative sentence because her sentence was ten years or less and the offenses for which she was convicted are not specifically excluded by statute. See Tenn. Code Ann. §§ 40-35-102(6), -303(a).

After a careful review of the record and the sentencing guidelines, we conclude that the evidence presented supports the trial court's decision and that the trial court did not err in ordering the Defendant to serve her sentence in confinement. The trial court properly considered the principles and purposes of the sentencing act. Thus, we review the trial court's findings with a presumption of correctness.

Regarding enhancement factors, the trial court found the Defendant to have an extensive criminal history, including six prior felony convictions and three misdemeanor convictions in addition to the nine felony convictions in the present case. The record clearly supports the application of this factor. Likewise, the record shows that the Defendant has failed to abide by the terms of probation in the past. The trial court also found that the Defendant abused a position of private trust by victimizing an elderly woman who was in failing health and whom the Defendant had been employed to help, not harm. Again, the record supports application of this factor.

Additionally, the Defendant has a long history of illegal drug use and has been unable thus far to rehabilitate herself notwithstanding multiple trips to in-patient treatment facilities and prison. Moreover, the Defendant continued to use illegal drugs even after her arrest in the present case. She failed to appear for a court-ordered drug screen on the day of her guilty plea submission hearing after telling the court that she would pass such a test. These actions led the trial court to conclude that the Defendant presented a poor potential for rehabilitation. In summary, the record supports all of the findings of the trial court on these enhancement

factors. Likewise, the record supports the trial court's rejection of the mitigating factors advanced by the Defendant.

## CONCLUSION

We conclude that the trial court properly ordered the Defendant to serve her sentence in confinement. Accordingly, we conclude that the Defendant is not entitled to relief, and we affirm the judgments of the trial court.

_____
JEFFREY S. BIVINS, JUDGE