# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### April 10, 2012 Session

## STATE OF TENNESSEE v. RAYMOND THOMAS

**Appeal from the Circuit Court of Dyer County**
**No. 10-CR-345      Lee Moore, Judge**

---

**No. W2011-02310-CCA-R3-CD  - Filed June 12, 2012**

---

Raymond Thomas ("the Defendant") was convicted by a jury of one count of selling less than .5 grams of cocaine, a Class C felony. After a hearing, the trial court sentenced the Defendant as a Range I, standard offender to three years of incarceration. The trial court ordered the Defendant to serve his sentence consecutively to a previous sentence. The Defendant now appeals, challenging the sufficiency of the evidence supporting his conviction and the consecutive service of his sentence. After a thorough review of the record, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment**
**of the Circuit Court Affirmed**

JEFFREY S. BIVINS, J., delivered the opinion of the Court, in which JOHN EVERETT WILLIAMS and CAMILLE R. MCMULLEN, JJ., joined.

James E. Lanier, District Public Defender, and H. Tod Taylor, Assistant District Public Defender, Dyersburg, Tennessee, for the appellant, Raymond Thomas.

Robert E. Cooper, Jr., Attorney General & Reporter; Rachel E. Willis, Senior Counsel; C. Phillip Bivens, District Attorney General; and Karen Burns, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### Factual and Procedural Background

Rodney Wright, Investigator for the Newbern Police Department and assigned to the West Tennessee Drug Task Force, testified that he was working on an undercover drug sale with Special Agent in Charge Rob Harrison and Steve Everett, also of the Newbern Police

Department. Assisting them was confidential informant Matt Irwin, with whom Investigator Wright had worked previously.

According to Investigator Wright, Irwin called the Defendant on February 25, 2010. Irwin had been provided sixty dollars with which to purchase cocaine from the Defendant. Irwin was driven to the location of his meeting with the Defendant and dropped off. Irwin was wearing audio and visual transmitters, which Investigator Wright monitored. Investigator Wright heard Irwin speaking with a male, including a conversation about "exchanging the money." Afterwards, Special Agent Harrison recovered "the drugs" from Irwin.

On cross-examination, Investigator Wright acknowledged that the transaction took place during the day. When asked about Irwin's criminal background, Investigator Wright stated that, to his knowledge, Irwin had no drug convictions, but he thought that Irwin had been "charged in a hunting incident or something." Investigator Wright also stated that his office did not submit Irwin to drug tests, and Investigator Wright did not know if Irwin used drugs.

Special Agent Rob Harrison testified that Irwin had worked for the Drug Task Force since Irwin was eighteen years old. Agent Harrison estimated Irwin's current age as "about twenty." Agent Harrison stated that Irwin had been a reliable informant. He met with Irwin prior to the buy on February 25, 2010, searched him, and provided him with electronic surveillance equipment. He drove Irwin to a drop-off location and monitored the ensuing events on the audio equipment while he continued to drive nearby.

The transaction between Irwin and the Defendant was video recorded and played for the jury. The record on appeal does not contain the recording. After the transaction, Agent Harrison picked Irwin up and recovered from him what appeared to be "three rocks of crack cocaine." Agent Harrison turned this evidence over to the TBI Crime Lab for testing.

On cross-examination, Agent Harrison stated that he did not drug test his confidential informants. He did not know if Irwin used drugs. He recalled giving Irwin the phone number to call and "briefly remember[ed] the conversation," but the phone conversation was not recorded.

Dana Parmenter testified that she previously was employed as a Special Agent Forensic Scientist at the TBI Crime Lab in Memphis, Tennessee. She tested the substance that Agent Harrison recovered from Irwin and determined that it was 0.2 grams of cocaine.

John Matthew Irwin testified that he was twenty years old. He was working for the Newbern Police Department as a confidential informant on February 25, 2010. He previously had participated in forty to forty-five drug cases for the Department. He also had

participated in other undercover drug cases for other agencies. He currently was working full-time for Pierce Packaging in Ripley, Tennessee, where he participated in random drug screens. He stated that he had never had a positive drug screen and that he was not a drug user. He testified that he participated in undercover work as a way to get his "foot in the door" for a career in law enforcement.

Irwin testified that he had met the Defendant a couple of weeks prior to February 25, 2010, in Newbern. He knew the Defendant by his nickname, "Frog." He identified the Defendant at trial. Their first meeting lasted thirty to forty-five minutes. Irwin did not do drugs with the Defendant at that time or any other time.

Irwin did not know the Defendant's phone number, but obtained it from the agent with whom he was working. He called the Defendant to set up a buy. Irwin asked the Defendant if he had sixty dollars worth of crack cocaine. The Defendant said yes and gave him a meeting place. Agent Harrison dropped Irwin off nearby, and Irwin then walked about a quarter mile to meet the Defendant. Irwin stated that he was "wired" for audio and video. The officers had provided him with the buy money. Irwin met the Defendant on the street and gave the Defendant sixty dollars. The Defendant gave him "three crack rocks." The Defendant asked Irwin "if [Irwin] had another twenty dollars that he had an extra rock on him." Irwin told the Defendant that he did not have any more money. Irwin then returned to Agent Harrison and turned over the evidence to him.

On cross-examination, Irwin stated that he had been working for various drug task forces since September 2009. He began working at Pierce Packaging after the instant drug buy. As to his prior drug cases, he testified that two were marijuana cases and that the rest were cocaine and "pills." Irwin denied knowing a Ray Lawrence, but clarified that he picked Lawrence up "off the streets not knowing who he was and he introduced me to Frog." He also denied smoking marijuana with the Defendant.

On redirect, Irwin stated that he picked Lawrence up while "doing an operation." He did not know who Lawrence was. Lawrence asked him if he was law enforcement, which Irwin denied. He did not do drugs with Lawrence.

The Defendant testified that he had known Irwin for five or six months prior to the instant drug transaction. The Defendant met Irwin through the Defendant's roommate. The Defendant stated that he and Irwin smoked marijuana together five or six times. The Defendant stated that he had suffered a back injury while helping a friend move and that he smoked marijuana to help with the pain. The Defendant described Irwin as a "buddy" and explained that Irwin also had driven him to the grocery store on multiple occasions. When Irwin called and said he wanted some crack, "it made [him] feel different about it then because [Irwin] ain't never asked for that." The Defendant described his response to Irwin's

-3-

request: "[S]o being a buddy I decided to get it for him." The Defendant denied using crack cocaine. He also denied selling it.

On cross-examination, the Defendant explained that Ray Lawrence, whose "actual" name was Ray Fisk, was the Defendant's roommate. The Defendant acknowledged that his roommate "does drugs." The Defendant reiterated that he did not use cocaine.

During closing argument, the defense argued that the transaction was a casual exchange. The trial court instructed the jury on the charged offense and casual exchange. After deliberating, the jury convicted the Defendant as charged. The trial court subsequently conducted a sentencing hearing. At the hearing, both the Board of Probation and Parole's presentence report and the Weststate Corrections Network's presentence report were admitted into evidence without objection. The Defendant did not testify, but offered an allocution, during which he apologized to the court, asked for mercy, explained that he had faced difficulties with obtaining his social security disability on the basis of his back injury, acknowledged his wrongdoing, and asked for a "chance to get [his] life in order." The trial court sentenced the Defendant as a Range I, standard offender to three years of incarceration, to be served consecutively to a prior sentence imposed in 2009. The trial court did not state on the record the basis of its decision to impose consecutive sentences. On appeal, the Defendant challenges the sufficiency of the evidence and the trial court's order that he serve the instant sentence consecutively to his prior sentence.

**Analysis**

*Sufficiency of the Evidence*

Our standard of review regarding sufficiency of the evidence is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). See also Tenn. R. App. P. 13(e). After a jury finds a defendant guilty, the presumption of innocence is removed and replaced with a presumption of guilt. State v. Evans, 838 S.W.2d 185, 191 (Tenn. 1992). Consequently, the defendant has the burden on appeal of demonstrating why the evidence was insufficient to support the jury's verdict. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). The appellate court does not weigh the evidence anew; rather, "a jury verdict, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts" in the testimony and all reasonably drawn inferences in favor of the State. State v. Harris, 839 S.W.2d 54, 75 (Tenn. 1992). Thus, "the State is entitled to the strongest legitimate view of the evidence and all reasonable or legitimate inferences which may be drawn therefrom." Id. (citation omitted). This standard of review applies to guilty verdicts based upon direct or circumstantial evidence. State v. Dorantes, 331 S.W.3d 370, 379 (Tenn. 2011) (citing State

-4-

v. Hanson, 279 S.W.3d 265, 275 (Tenn. 2009)).  In Dorantes, our Supreme Court adopted the United States Supreme Court standard that "direct and circumstantial evidence should be treated the same when weighing the sufficiency of such evidence."  Id. at 381.  Accordingly, the evidence need not exclude every other reasonable hypothesis except that of the defendant's guilt, provided the defendant's guilt is established beyond a reasonable doubt.  Id.

Our criminal code provides that it is an offense to "knowingly . . . [s]ell a controlled substance."  Tenn. Code Ann. § 39-17-417(a)(3) (2010).  Cocaine is a Schedule II controlled substance.  Id. § 39-17-408(b)(4) (2010).  A person acts knowingly "when the person is aware of the nature of the conduct."  Id. § 39-11-302(b) (2010).  The sale of less than .5 grams of cocaine is a Class C felony.  Id. § 39-17-417(c)(2)(A).

The Defendant does not argue that he did not sell a small amount of cocaine to Irwin. Rather, he contends that the evidence supports only a conviction of "casual exchange."  Our criminal code provides that "[i]t is an offense for a person to knowingly possess or casually exchange a controlled substance, unless the substance was obtained directly from, or pursuant to, a valid prescription or order of a practitioner while acting in the course of professional practice."  Id. § 39-17-418(a) (2010).  Under the facts of this case, a casual exchange is a Class A misdemeanor.  Id. § 39-17-418(c).

We disagree with the Defendant's contention that the evidence supports only a conviction of casual exchange.  When viewed in the light most favorable to the State, the proof at trial demonstrated that Irwin set up a cocaine buy with the Defendant by telephone and that the Defendant subsequently met Irwin, delivered the requested amount of cocaine to him, and accepted the agreed-upon sum of sixty dollars.  Moreover, the Defendant attempted to sell an additional twenty dollars worth of cocaine to Irwin.  This proof is sufficient to support the Defendant's conviction.  The jury rejected the Defendant's theory that the transaction was merely a casual exchange, as was its prerogative.  The Defendant is entitled to no relief on this issue.

*Sentence*

The Defendant is a standard, Range I offender.  See Tenn. Code Ann. § 40-35-105(a), (b) (2010).  The Range I sentence for a Class C felony is three to six years.  Id. § 40-35-112(a)(3) (2010).  The trial court sentenced the Defendant to the minimum three-year sentence, to be served in the Tennessee Department of Correction. The Defendant does not challenge the length of his sentence or that he serve it incarcerated.  The trial court also ordered the Defendant to serve the instant sentence consecutively to a prior sentence.  The Defendant contends that the trial court erred on this latter issue.

The applicable standard of review when a defendant challenges his or her sentence is *de novo* on the record with a presumption of correctness. Tenn. Code Ann. § 40-35-401(d) (2010). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). If the trial court did not do so, then the presumption fails, and this Court's review is *de novo* with no presumption of correctness. State v. Pierce, 138 S.W.3d 820, 827 (Tenn. 2004). However, if the trial court considered the statutory criteria, imposed a lawful but not excessive sentence, stated its reasons for the sentence on the record, and its findings are supported by the record, then this Court is bound by the trial court's decision. State v. Carter, 254 S.W.3d 335, 346 (Tenn. 2008). On appeal, the party challenging the sentence has the burden of demonstrating that it is improper. Tenn. Code Ann. § 40-35-401, Sentencing Comm'n Cmts.; Carter, 254 S.W.3d at 344.

In this case, the trial court did not specify its reason for ordering the Defendant to serve the instant sentence consecutively to his prior felony sentence. Therefore, our review on this issue is de novo with no presumption of correctness. In 2009, the Defendant pled guilty to and was convicted of one count of facilitation of the sale of over .5 grams of cocaine, a Class C felony. See Tenn. Code Ann. §§ 39-17-417(c)(1), 39-11-403(b) (2010). He was sentenced to three years with ninety days to be served in jail and the remaining time to be served on community corrections. The instant crime was committed while the Defendant was serving his community corrections sentence. The record also reflects that the Defendant has five prior misdemeanor convictions.

Our Criminal Sentencing Reform Act of 1989 provides that a trial court may impose consecutive service if it finds by a preponderance of the evidence any of the following circumstances:

> (1) The defendant is a professional criminal who has knowingly devoted the defendant's life to criminal acts as a major source of livelihood;
>
> (2) The defendant is an offender whose record of criminal activity is extensive;
>
> (3) The defendant is a dangerous mentally abnormal person so declared by a competent psychiatrist who concludes as a result of an investigation prior to sentencing that the defendant's criminal conduct has been characterized by a pattern of repetitive or compulsive behavior with heedless indifference to consequences;
>
> (4) The defendant is a dangerous offender whose behavior indicates little or no regard for human life and no hesitation about committing a crime in which the risk to human life is high;

(5) The defendant is convicted of two (2) or more statutory offenses involving sexual abuse of a minor with consideration of the aggravating circumstances arising from the relationship between the defendant and victim or victims, the time span of defendant's undetected sexual activity, the nature and scope of the sexual acts and the extent of the residual, physical and mental damage to the victim or victims;

(6) The defendant is sentenced for an offense committed while on probation; or

(7) The defendant is sentenced to criminal contempt.

Tenn. Code Ann. § 40-35-115(b) (2010). See also State v. Imfeld, 70 S.W.3d 698, 708 (Tenn. 2002). Moreover, the length of the aggregate sentence should be "justly deserved in relation to the seriousness of the offense" and should be "no greater than that deserved for the offense committed." Tenn. Code Ann. §§ 40-35-102(1), -103(2). See also In re Sneed, 302 S.W.3d 825, 828-29 (Tenn. 2010); Imfeld, 70 S.W.3d at 708. Whether a defendant's sentences are to be served concurrently or consecutively is left to the trial court's sound discretion. State v. Hastings, 25 S.W.3d 178, 181 (Tenn. Crim. App. 1999).

The Defendant argues that the trial court ordered consecutive service on the basis of (b)(6) in contravention of the Tennessee Supreme Court's holding in State v. Pettus, 986 S.W.2d 540, 544 (Tenn. 1999), and that the trial court's ruling must be reversed. We disagree. In Pettus, the court clarified that "the legislature did not intend a community corrections sentence and a probation sentence to be equivalents for purposes of consecutive sentencing under Tenn. Code Ann. § 40-35-115(b)(6)." Id. Accordingly, a trial court may not order a new sentence to be served consecutively to a prior sentence only on the basis that the prior sentence was being served on community corrections. Id. at 544-45.

We disagree, however, that the trial court's sole basis for ordering the Defendant to serve his instant sentence consecutively to his prior sentence had to be based upon (b)(6). The trial court simply did not place on the record its reason for ordering consecutive service. Furthermore, Pettus makes clear that, even if the trial court erroneously ordered consecutive service on the basis of (b)(6), we may affirm the trial court's decision if another basis exists for ordering consecutive service. See Pettus, 986 S.W.2d at 545 (vacating consecutive service imposed pursuant to (b)(6), but affirming consecutive service on basis that the defendant's record of criminal activity was extensive).

In this case, based upon our de novo review of the entire record, we hold that the Defendant's prior record of criminal activity is sufficiently extensive to support the imposition of consecutive service. He has a prior felony and numerous prior misdemeanors.

He admitted to frequent marijuana use at trial and in his presentence report. He also admitted in his presentence report to using prescription pain medication without a prescription. Although his criminal record does not contain convictions for his marijuana or illegal medication use, this Court has recognized that "[p]rior criminal activity does not require prior convictions; prior criminal behavior is sufficient." State v. William Lewis Houston, No. M1999-01430-CCA-R3-CD, 2000 WL 1793088, at *12 (Tenn. Crim. App. Dec. 7, 2000).

Moreover, the trial court did find that the Defendant's crime was "serious" and referred to the "bad drug problem" in the county. The trial court also found that the Defendant's prior record was "substantial" and further stated the following:

> You've had less restrictive measures than incarceration and they have not proved to be successful so consequently the Court feels that your rehabilitation prospects are not that great. And I'm not – [defense counsel] is right, you did not deny the deal that went through, you just said it was a casual exchange rather than a sale. It appeared very much to me to be a sale. I don't think you are accepting responsibility.

Thus, although the trial court did not make specific findings that the Defendant's consecutive sentence was justly deserved in relation to the seriousness of the offense and that it was no greater than that deserved for the offense committed, we hold that the record establishes these prerequisites. The Defendant has a significant history of illegal drug use as well as other crimes. He had been on community corrections for less than a year when he committed the instant offense. His prior felony sentence was the result of a similar drug transaction. Clearly, the record reflects a poor chance of rehabilitation at this point. Therefore, based upon our de novo review, we conclude that consecutive sentencing is appropriate. Accordingly, the Defendant is entitled to no relief on this basis.

### Conclusion

For the foregoing reasons, we affirm the trial court's judgment.

_____
JEFFREY S. BIVINS, JUDGE